[Nos. A072326, A074330. First Dist., Div. Four. Jan. 29, 1997.]

In re the Marriage of VIVIAN and DAVID BIDDLE.
VIVIAN BIDDLE, Appellant, v.
PAUL BIDDLE, Respondent.

COUNSEL

Bernard N. Wolf and Michael B. Price for Appellant.

Phillip E. Benson for Respondent.

OPINION

POCHÉ, Acting P. J.—  Vivian Biddle appeals from that portion of the "Further Judgment on Reserved Issues" which decreed that she has no

community property interest in a *qui tam* cause of action currently being prosecuted by her former husband.[1]

■ With antecedents older than the republic, the *qui tam* action is a type of private attorney general lawsuit; it allows an individual to sue to enforce a public statutory right and to retain a portion of any moneys recovered thereby. (See generally, Comment, *Qui Tam Actions: The Role of the Private Citizen in Law Enforcement* (1973) 20 UCLA L.Rev. 778.)[2] ■ The relevant statute here is federal, dating back to the Civil War. (20 UCLA L.Rev. at p. 788, fn. 59.) It specifies: (1) the circumstances in which an individual who discovers that a false claim for payment has been presented to the United States may commence litigation to recover civil penalties, (2) how the United States must have an opportunity to investigate and determine if it will assume control of the litigation, and (3) the amount the individual may retain if successful in prosecuting the action in the name of the United States government. (31 U.S.C. § 3730.)[3]

While employed by the United States government as a contract administrator at Stanford University, Paul Biddle became aware of what he believed were questionable billing practices by Stanford that could amount to many millions of dollars. In 1991, he filed a *qui tam* complaint in federal district court on behalf of the United States. (*United States* ex rel. *Biddle* v. *Leland Stanford Jr. University Board of Trustees* (U.S. Dist. Ct. (N.D.Cal.), 1991, No. 91-CV-20618).) Three years later, the Biddles' marriage of 21 years was dissolved. The *qui tam* action, which the United States had declined to take over, was still at the pleading stage when the trial court had to decide whether any derivative recovery Mr. Biddle might obtain for his efforts would constitute community property.

"Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage . . . is community property." (Fam. Code, § 760.) Causes of action are ordinarily deemed a form of property. (See 4 Witkin, Summary of Cal. Law (9th ed. 1987) Personal Property, § 3, p. 10.) Beyond these generalities, the parties cannot agree.

---

[1]She previously filed a notice of appeal from the trial court's memorandum of decision on this issue. Because that is not an appealable order (e.g., *Industrial Indemnity Co.* v. *City and County of San Francisco* (1990) 218 Cal.App.3d 999, 1003, fn. 3 [267 Cal.Rptr. 445]), the purported appeal therefrom will be dismissed.

[2]According to Blackstone, "the suit is called a *qui tam* action[] because it is brought by a person '*qui tam pro domino rege, etc., quam pro se ipso in hac parte sequitur* (who prosecutes this suit as well for the king, etc., as for himself).' " (3 Blackstone's Commentaries 161.)

[3]California adopted a similar statute in 1987. (Gov. Code, §§ 12650-12655, added by Stats. 1987, ch. 1420, § 1, p. 5237.)

Mr. Biddle argues that property is statutorily defined in this state as something which can be owned (Civ. Code, § 654). No individual can "own" a *qui tam* cause of action because it belongs to the United States. Therefore in his view he has no property interest in the cause of action that would qualify it for division as community property. The former Mrs. Biddle counters that a *qui tam* cause of action may not be "owned" by her ex-spouse but it nevertheless amounts to a contingent right to future income, of the sort that California law treats as community property. (See *In re Marriage of Brown* (1976) 15 Cal.3d 838, 844-847 [126 Cal.Rptr. 633, 544 P.2d 561].) We agree with Mrs. Biddle—the dispositive focus is on what the *qui tam* action may produce, not whether Mr. Biddle will have the power to control the litigation.

It is true that a *qui tam* plaintiff does not "own" the cause of action in the conventional sense of that word. The right the *qui tam* plaintiff seeks to vindicate belongs to the United States government; even if it takes no active part in that effort, the United States government is always the real party in interest. (E.g., *U.S.* ex rel. *Kreindler* v. *United Technologies* (2d Cir. 1993) 985 F.2d 1148, 1154; *United States* v. *Baker-Lockwood Mfg. Co.* (8th Cir. 1943) 138 F.2d 48, 51.) It is the United States government which can, if it is conducting the prosecution, settle or dismiss the case notwithstanding any objections the *qui tam* plaintiff may have. (31 U.S.C. § 3730(c)(2)(A)-(c)(2)(B).) If the government declines to take over the case, it may nevertheless intervene at virtually any point in the litigation. (See *U.S.* v. *Texas Instruments Corp.* (9th Cir. 1994) 25 F.3d 725, 727 [government allowed to intervene on appeal to challenge settlement by *qui tam* plaintiff].) But if the government does decline to prosecute the case, "[t]he *qui tam* plaintiff is the only person 'charged with responsibility to act in the circumstances.' " (*U.S.* ex rel. *Hyatt* v. *Northrop Corp.* (9th Cir. 1996) 91 F.3d 1211, 1217.) If the government allows the *qui tam* plaintiff to prosecute, the plaintiff becomes the de facto assignee of the government's cause of action pursuant to a statutory "enforceable unilateral contract." (See *U.S.* ex rel. *Kelly* v. *Boeing Co.* (9th Cir. 1993) 9 F.3d 743, 748 and decisions cited.) The *qui tam* plaintiff in a successful case is ensured of a monetary return (in the form of "proceeds," attorneys' fees and expenses) regardless of whether the case was conducted by the government or the plaintiff unless the plaintiff is convicted in connection with the commission of the underlying fraud. (31 U.S.C. § 3730(d).)[4]

The cause of action may not be "property" in the strict sense that it can be owned without restriction by a *qui tam* plaintiff, but the money generated by

---

[4]The amount of proceeds recoverable ranges from 15 to 30 percent, depending on: (1) whether it was the government or the *qui tam* plaintiff which prosecuted the action, and (2) whether the *qui tam* plaintiff was involved with—but not convicted of—committing the fraud.

the cause of action which ends up in the plaintiff's hands clearly is property. The realization of that is dependent upon at least two contingencies—a judicial action must be initiated by the *qui tam* plaintiff, and the defendant must part with the money after trial or settlement. If these contingencies are satisfied, the plaintiff's entitlement to a cash recovery is, to all intents and purposes, established. This situation is indistinguishable from that of a married producer who starts work on a movie and, after separating from her husband, completes the movie which becomes a smash hit; the contingency of success results in a divisible community asset. (See *In re Marriage of Zaentz* (1990) 218 Cal.App.3d 154, 164 [267 Cal.Rptr. 31]; see also *In re Marriage of Kilbourne* (1991) 232 Cal.App.3d 1518, 1524, fn. 5 [284 Cal.Rptr. 201] [listing contingent future interests held to be community property].)[5]

It is undisputed that Mr. Biddle was married when he discovered and investigated the billing practices that are the subject of the *qui tam* action. It is also undisputed that the *qui tam* action had been filed prior to the Biddles' separation. The action thus amounts to a contingent future interest and divisible community property. (*In re Marriage of Brown, supra*, 15 Cal.3d 838, 846-847.) The specifics of the division are for the trial court's discretion. (See Fam. Code, § 2550; *In re Marriage of Gillmore* (1981) 29 Cal.3d 418, 423 [174 Cal.Rptr. 493, 629 P.2d 1].)

The purported appeal from the memorandum decision is dismissed. The part of the judgment appealed from is reversed. Appellant shall recover her costs.

Reardon, J., and Hanlon, J., concurred.

Respondent's petition for review by the Supreme Court was denied May 14, 1997.

---

[5] A *qui tam* cause of action may also be analogized to a lottery ticket. The decisions of this court recognize that the ticket itself is property (see *City of Gilroy* v. *State Bd. of Equalization* (1989) 212 Cal.App.3d 589 [260 Cal.Rptr. 723]), as are any winnings the ticket may contingently signify (see *County of Contra Costa* v. *Lemon* (1988) 205 Cal.App.3d 683 [252 Cal.Rptr. 455]).