[No. B237896. Second Dist., Div. Three. Mar. 5, 2013.]

Conservatorship of the Person of GREGORY D.
GREGORY D. et al., Petitioners and Respondents, v.
LINDA D., Objector and Appellant.

**64**

Counsel

Daniel D. Rodarte for Objector and Appellant.

Joseph D., in pro. per., for Petitioner and Respondent Joseph D.

Law Offices of Cynthia R. Pollock, Cynthia R. Pollock and Douglas S. Fabian for Petitioners and Respondents Bruce Hitchman and Lee Ann Hitchman.

No appearance for Petitioner and Respondent Gregory D.

## Opinion

KLEIN, P. J.—Linda D. (Linda), the mother of limited conservatee Gregory D. (Gregory) purports to appeal an order on petition for instructions regarding administration of Gregory's limited conservatorship.

Because Linda lacks standing to prosecute this appeal, relating to various alleged violations of Gregory's rights, the appeal is dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

Gregory is a developmentally disabled adult, currently in his mid-20s. He was diagnosed with autism as a child. His parents, Joseph D. (Joseph) and Linda, obtained a divorce, and Gregory resided with each of his parents, at their respective homes, on alternating weeks. In 2005, Gregory reached the age of majority. In 2008, he moved into his own apartment, with supportive services which enable him to live independently.

1. *Summary of conservatorship proceedings.*

In 2004, Linda and Joseph filed competing petitions to be named as the limited conservator of their son Gregory. In 2005, they entered into a settlement agreement setting the terms for Gregory's limited conservatorship. Pursuant to said settlement agreement, Joseph withdrew his petition for conservatorship and stipulated to Linda's appointment as Gregory's conservator.

On July 25, 2005, the trial court appointed Linda as Gregory's limited conservator. The appointment order placed the following limitations on Gregory: "1. The limited conservatee lacks the capacity to control his own residence or place of dwelling. [¶] 2. The limited conservatee lacks the capacity to access his confidential records and papers." Linda was granted

various powers, including the power to fix Gregory's place of residence, access to his confidential records and papers, and the power to contract on his behalf. The settlement agreement was signed by Joseph, Linda, and their respective attorneys, as well as by Gregory's attorney.

While Linda was serving as limited conservator, further litigation erupted between Joseph and Linda pertaining to the administration of the conservatorship. Joseph sought Linda's removal, contending she had improperly relocated Gregory from half-time residence in Joseph's home and had prohibited contact between Gregory and Joseph's family.

In August 2008, the trial court appointed Paul Gaulke as the PVP attorney for Gregory.[1] In September 2008, the trial court appointed Thomas Beltran as an expert to advise the court on the appropriateness of Gregory's programming and his reasonable needs, "in the context of the specialized programs and services that he receives."

On July 2, 2009, after Joseph and Linda entered into another settlement agreement, the trial court entered an order providing, inter alia, that Linda would resign as limited conservator immediately upon appointment of a successor limited conservator for Gregory. On September 11, 2009, the trial court appointed Linda Cotterman (Cotterman) as the successor limited conservator for Gregory.

In April 2011, Joseph filed a petition for termination of Cotterman as limited conservator. Following trial of the matter on September 20, 2011, the trial court granted the petition to remove Cotterman, finding that she had violated various court orders.

On November 18, 2011, the trial court appointed Bruce Hitchman and Lee Ann Hitchman (the Hitchmans) as the successor limited conservators.

### 2. The operative petition for instructions.

On or about October 20, 2011, Gaulke, Gregory's court-appointed attorney, filed a petition for instructions, seeking guidance from the court as to how the new limited conservators could best administer Gregory's limited conservatorship so as to minimize further disputes between the parties.

---

[1] PVP denotes a Probate Volunteer Panel attorney (*Hall v. Kalfayan* (2010) 190 Cal.App.4th 927, 929 [118 Cal.Rptr.3d 629]), who represents the conservatee's interests. (See Prob. Code, § 1470, subd. (a) [court may appoint private legal counsel for a conservatee if the court determines the person is not otherwise represented by legal counsel and that the appointment would be helpful to the resolution of the matter or is necessary to protect the person's interests].)

Joseph and Linda filed responses thereto. Linda's papers objected to the PVP's petition on the following grounds: it requested powers that were not specifically requested in the petition for appointment of the limited conservator; the petition was too vague to give the parties notice as to what additional powers were being sought; the instructions sought were detrimental to the purposes of the limited conservatorship; the petition did not state sufficient facts to establish that the conservatee's condition necessitated that additional powers be granted; and the petition sought orders in excess of the court's jurisdiction and in violation of the conservatee's civil rights.

On November 18, 2011, the trial court issued its order on the PVP's petition for instructions. As relevant to this appeal, the trial court made certain rulings with respect to the issues of visitation, disclosure of Gregory's records, and replacement of Gregory's supported living services vendor.

(1) The trial court ordered the Hitchmans, the newly appointed limited conservators, to comply with an earlier court order removing My Life Foundation as Gregory's supported living service vendor, and to retain within 60 days a new successor supported living services vendor "that has not previously cared for the Limited Conservatee, including personal care individuals."

(2) The trial court established the following weekend visitation schedule for Gregory: the first weekend, Saturday and Sunday only, Gregory would determine how to spend his weekend; the second weekend, Saturday and Sunday only, were assigned to Joseph, who would decide how that weekend visitation would be spent with Gregory, with Gregory being able to elect an overnight stay at Joseph's home or elsewhere; the third weekend, Saturday and Sunday only, were assigned to Linda, who would decide how that weekend visitation would be spent with Gregory, with Gregory being able to elect an overnight stay at Linda's home or elsewhere; upon the conclusion of the three-week cycle, the rotation would begin again, with the visitation schedule ongoing until further order of the court.

(3) The trial court ordered all of Gregory's records, including his medical, financial and personal records, be furnished by the Hitchmans to Gregory's parents, in accordance with an earlier court order.

On December 8, 2011, Linda filed a timely notice of appeal from the November 18, 2011 order on the petition for instructions.[2]

---

[2] The November 18, 2011 order on the petition for instructions regarding administration of Gregory's limited conservatorship is appealable as an order "[a]uthorizing, instructing, or directing a fiduciary . . . ." (Prob. Code, § 1300, subd. (c).)

## CONTENTS

Linda contends the visitation order violates Gregory's constitutional rights to liberty and privacy; the order directing termination of My Life Foundation as Gregory's supported living services care provider was in excess of the trial court's jurisdiction; and the order mandating disclosure of Gregory's medical, financial and personal records to his parents violates Gregory's constitutional and statutory rights of privacy.

However, the threshold issue for this court is whether Linda has standing to assert these arguments.

## DISCUSSION

*Linda is not aggrieved and cannot assert errors affecting only Gregory, who has not appealed.*

    a.   *General principles; the requirement that an appellant be personally aggrieved.*

The right to appeal is purely statutory. (*Jennifer T. v. Superior Court* (2007) 159 Cal.App.4th 254, 260 [71 Cal.Rptr.3d 293].) Code of Civil Procedure section 902 defines "Who May Appeal" from a judgment. (See Code Commissioners' Notes, 17B West's Ann. Code Civ. Proc. (2009 ed.) foll. § 902, p. 10.) The statute provides " 'Any party *aggrieved*' may appeal from an adverse judgment. (Code Civ. Proc., § 902.) The test is twofold—one must be *both a party of record to the action and aggrieved* to have standing to appeal." (*Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336, 1342 [100 Cal.Rptr.2d 446], some italics added.) Thus, notwithstanding an appealable judgment or order, "[a]n appeal may be taken only by a party who has standing to appeal. [Citation.] This rule is jurisdictional. [Citation.]" (*Sabi v. Sterling* (2010) 183 Cal.App.4th 916, 947 [107 Cal.Rptr.3d 805].) It cannot be waived. (*Marsh v. Mountain Zephyr, Inc.* (1996) 43 Cal.App.4th 289, 295 [50 Cal.Rptr.2d 493].)

" 'One is considered "aggrieved" whose rights or interests are injuriously affected by the judgment.' (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737 [97 Cal.Rptr. 385, 488 P.2d 953] . . . .) Conversely, 'A party who is not aggrieved by an order or judgment has no standing to attack it on appeal.' (*Niles v. City of San Rafael* (1974) 42 Cal.App.3d 230, 244 [116 Cal.Rptr. 733].)" (*El Dorado Irrigation Dist. v. State Water Resources Control Bd.* (2006) 142 Cal.App.4th 937, 977 [48 Cal.Rptr.3d 468], italics omitted.)

Injurious effect *on another party* is insufficient to give rise to appellate standing. A "party cannot assert error that injuriously affected only

nonappealing coparties." (*Estrada v. RPS, Inc.* (2005) 125 Cal.App.4th 976, 985 [23 Cal.Rptr.3d 261].) This is "no mere technicality, but is grounded in the most basic notion of why courts entertain civil appeals. We are here to provide relief for appellants who have been wronged by trial court error. Our resources are limited and thus are not brought to bear when appellants have suffered no wrong but instead seek to advance the interests of others who have not themselves complained." (*Rebney v. Wells Fargo Bank* (1990) 220 Cal.App.3d 1117, 1132 [269 Cal.Rptr. 844].)

    b.   *Linda's appeal seeks only to advance the interests of Gregory, who has not appealed.*

Here, Linda's opening brief raises the following assignments of error with respect to the November 18, 2011 order: (1) the visitation order, requiring Gregory to spend weekends with his parents, violates *Gregory's* rights to liberty and privacy; (2) the order terminating My Life Foundation as the contracted provider of Gregory's supported living services violated *Gregory's* rights under the Lanterman Developmental Disabilities Services Act (Welf. & Inst. Code, § 4500 et seq.) and was in excess of the court's jurisdiction because there was no exhaustion of administrative remedies before My Life Foundation was replaced as Gregory's provider; and (3) the order directing disclosure of Gregory's records to his parents violates *Gregory's* constitutional and statutory rights of privacy.

██ Linda has not identified any of her own rights or interests which are injuriously affected by the November 18, 2011 order. Her assignments of error pertain solely to alleged deprivations of Gregory's rights. However, Linda lacks standing to assert error that injuriously affects only Gregory, a nonappealing party. (*Estrada v. RPS, Inc., supra*, 125 Cal.App.4th at p. 985.)

Linda's status as Gregory's concerned mother does not confer standing to appeal on his behalf. With respect to Linda's role vis-à-vis Gregory, the July 2, 2009 order pursuant to settlement agreement contains the following recital: "14. LINDA and JOSEPH agree that they shall not hold any title, occupation, or position in this matter, *other than parent of GREGORY*." (Italics added.) Gregory, an adult, is under the limited conservatorship of the Hitchmans. In addition, Gregory has his own counsel. He is represented by Attorney Gaulke, a court-appointed attorney who is PVP counsel for the limited conservatee. Gregory declined to appeal from the November 18, 2011 order. Linda, who is not personally aggrieved by said order, lacks standing to assert error on Gregory's behalf.

c. *Probate Code section 1829 does not confer appellate standing upon Linda.*

Probate Code section 1829, pertaining to the establishment of a conservatorship, provides: "*Any of the following persons may appear at the hearing to support or oppose the petition*: [¶] (a) The proposed conservatee. [¶] (b) The spouse or registered domestic partner of the proposed conservatee. [¶] (c) *A relative of the proposed conservatee.* [¶] (d) Any interested person or friend of the proposed conservatee." (Italics added.)

This provision entitled Linda to participate in the conservatorship proceeding in the court below. However, merely because Linda was authorized to appear in the matter *below* does not mean she is entitled to prosecute an appeal from the trial court's order.

As discussed above, standing to appeal is governed by Code of Civil Procedure 902. Absent a showing by Linda that she is injuriously affected by the trial court's order, she lacks standing to appeal. As stated in *Rebney v. Wells Fargo Bank, supra,* 220 Cal.App.3d at page 1132, "The scope of appellate review, however, is never defined by the parameters of trial court jurisdiction, but is instead limited by specialized jurisdictional principles that are unique to appellate litigation. The requirement of standing to appeal is one of those principles, and because it is jurisdictional [citations] it imposes absolute limitations on the appellate court's guardian role."

## DISPOSITION

Linda's purported appeal from the November 18, 2011 order is dismissed. Respondents shall recover their costs on appeal.

Kitching, J., and Aldrich, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 12, 2013, S209942.