
ORDERED PUBLISHED

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | ) BAP No.   CC-13-1367-TaDKi |
| | ) |
| PATRICK ROY LEWIS, | ) Bk. No.   SV 11-13919-AA |
| | ) |
| Debtor. | ) |
| _____ | ) |
| | ) |
| KALLMAN & COMPANY LLP, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) **OPINION** |
| | ) |
| DAVID K. GOTTLIEB, CHAPTER 7 | ) |
| TRUSTEE; JUDITH LEWIS, | ) |
| | ) |
| Appellees. | ) |
| _____ | ) |

Argued and Submitted on June 26, 2014
at Pasadena, California

Filed – August 20, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Alan M. Ahart, Bankruptcy Judge, Presiding

---

Appearances:    Michael Sanford Kogan of Kogan Law Firm, APC for Appellant Kallman & Company LLP; Lawrence D. Simons of the Law Offices of Larry D. Simons for Appellee David Gottlieb; and Simon Jonathan Dunstan of Hughes & Dunstan, LLP for Appellee Judith Lewis.

---

Before:   TAYLOR, DUNN, and KIRSCHER, Bankruptcy Judges.

TAYLOR, Bankruptcy Judge:

The bankruptcy court entered an order authorizing a sale of the bankruptcy estate's interest in a state court action to creditor Kallman & Company LLP ("K&C"). After the Debtor moved for reconsideration of the K&C sale order, the chapter 7 trustee moved to approve the sale of the same property to the Debtor's non-filing wife pursuant to § 363(i).[1] The bankruptcy court entered an order approving the § 363(i) sale; K&C appealed.

This Panel vacated the order approving the § 363(i) sale and remanded to the bankruptcy court for further findings of fact and conclusions of law. See Kallman & Co. LLP v. Gottlieb (In re Lewis), 2013 WL 2367797 (9th Cir. BAP May 30, 2013). On remand, the bankruptcy court issued findings and conclusions and entered a second order approving the § 363(i) sale; K&C again appeals.

We conclude that the bankruptcy court was authorized to enter the second § 363(i) order and that it did not abuse its discretion in approving the § 363(i) sale to the non-filing wife. We, thus, AFFIRM the bankruptcy court.

**FACTS**

The Debtor, Patrick Roy Lewis, has been married to Judith Lewis ("Judith")[2] since 1992.

Prior to filing bankruptcy, the Debtor initiated an action

---

[1]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2]  We refer to Judith by her first name for clarity and consistency with the prior memorandum decision; we intend no disrespect.

2

against K&C – his former employer – in California state court. The complaint alleged claims for breach of contract, breach of fiduciary duty, failure to pay wages, and an accounting (the "Claims"). In response, K&C filed a cross-complaint against the Debtor.

While the state court action was pending (and prior to judgment), the Debtor filed a chapter 7 bankruptcy petition, and David K. Gottlieb was appointed as Trustee. Judith did not file and, thus, was not a debtor. In scheduling the Claims, the Debtor did not indicate whether they were a community asset or belonged to him separately, although he specifically identified the ownership of other scheduled assets.

At some point, K&C approached the Trustee about purchasing the estate's interest in the Claims. Following negotiations, the parties agreed that K&C would purchase the Claims for $40,000, subject to a minimum overbid of $10,000, and that parties would enter into mutual releases. The parties reduced the agreement to a writing, which each executed (the "Agreement").

The Trustee sought approval of the sale under § 363(b); the Debtor opposed. At the sale hearing, the bankruptcy court overruled the Debtor's opposition and, in the absence of any overbid, orally approved the sale of the Claims to K&C. The parties apparently intended to proceed slowly to conclude the sale; the Agreement did not require payment of consideration from K&C until 30 days after the closing date, and the closing date occurred only when the order approving the sale became final and nonappealable.

A week after the K&C sale hearing, Debtor's counsel advised

the Trustee that Judith intended to exercise her right under § 363(i) to purchase the Claims for $40,000. Unaware of the brewing controversy, the bankruptcy court entered an order approving the sale of the Claims to K&C ("K&C Sale Order"). The Debtor then timely moved for reconsideration and the Trustee concurrently moved to approve a stipulation to sell the Claims to Judith under § 363(i). The Trustee based the § 363(i) motion on his stated assumptions that the Claims were community property and that a § 363(i) sale was appropriate as the sale to K&C was not yet consummated.

At the subsequent hearing on both the motion to reconsider and the motion to approve the § 363(i) sale, the parties agreed that they could not locate any case authority establishing the date of consummation for purposes of § 363(i). In the absence of such authority, they disagreed as to when or whether the K&C sale was consummated. After further argument, the bankruptcy court orally approved the § 363(i) motion.

The bankruptcy court then turned to the reconsideration motion, which K&C and the Trustee both opposed. The Trustee, in particular, maintained that the K&C Sale Order was necessary to establish the price that Judith was required to pay for the § 363(i) sale. As a result, the bankruptcy court orally denied the reconsideration motion.

The bankruptcy court afterward entered two orders in May of 2012: an order denying the Debtor's reconsideration motion and an order approving the § 363(i) sale to Judith ("First Judith Sale Order"). K&C appealed the First Judith Sale Order to this Panel. The order denying reconsideration was not appealed, and, thus,

4

the K&C Sale Order became final on May 23, 2012.

Based on a lack of factual findings as required by Rule 7052, the Panel vacated the First Judith Sale Order and remanded to the bankruptcy court with instructions to enter its findings and conclusions and to determine whether the First Judith Sale Order superseded the K&C Sale Order. The bankruptcy court did so; it entered a second order approving the § 363(i) sale to Judith ("Second Judith Sale Order") and issued separate findings and conclusions supporting its decision. It determined that: the Claims were community property; the K&C sale was not consummated before Judith invoked her § 363(i) purchase right; and, in any event, the Second Judith Sale Order superseded the K&C Sale Order. K&C timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(N). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.  Was the bankruptcy court authorized to enter the Second Judith Sale Order?

2.  Did the bankruptcy court abuse its discretion in approving the sale to Judith pursuant to § 363(i)?

## STANDARD OF REVIEW

We review an order approving a § 363 sale for an abuse of discretion. Moldo v. Clark (In re Clark), 266 B.R. 163, 168 (9th Cir. BAP 1998). A review of an abuse of discretion determination involves a two-pronged test; first, we determine de novo whether the bankruptcy court identified the correct legal rule for

5

application. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). If not, then the bankruptcy court necessarily abused its discretion. Id. at 1262. Otherwise, we next review whether the bankruptcy court's application of the correct legal rule was clearly erroneous; we will affirm unless its findings were illogical, implausible, or without support in inferences that may be drawn from the facts in the record. Id.

## DISCUSSION

On appeal, K&C argues that the bankruptcy court lacked authority to enter the Second Judith Sale Order and that, in the alternative, the bankruptcy court erred in approving the § 363(i) sale to Judith.

**A. The bankruptcy court was authorized to enter the Second Judith Sale Order.**

K&C argues that the K&C Sale Order became a final, nonappealable order on May 23, 2012 and, thus, that the sale was consummated for § 363(i) purposes on the same date. On this record, we disagree.

**1. The sale to K&C was never consummated.**

In pertinent part, § 363(i) provides that:

Before the consummation of a sale . . . of property of the estate that was community property of the debtor and the debtor's spouse immediately before the commencement of the case, the debtor's spouse . . . may purchase such property at the price at which such sale is to be consummated.

The plain text of the statute makes clear that the debtor's spouse must both exercise a § 363(i) purchase right and complete the purchase prior to consummation of the first sale. The Code, however, does not define "consummation." Only eight other Code

6

sections contain the term in some variation.  Most of these Code sections involve consummation or substantial consummation of a chapter 11 plan and, while indirectly helpful, involve facts that are facially distinguishable from an asset sale as is relevant to § 363(i).[3]  The other Code sections including the term consummation relate to asset sales, but there is no case law in connection with these sections that aids our analysis here.[4]

We, thus, begin with the common meaning of consummation, which is "[t]he action or an act of completing, accomplishing, or finishing," OED Online, http://www.oed.com/view/Entry/39989? (last visited August 18, 2014), or "the ultimate end," Merriam-Webster Online, http://www.merriam-webster.com/dictionary/consummation (last visited August 18, 2014).  This common meaning dictates that, for the purposes of § 363(i), a sale of property is consummated when the sale is complete, accomplished, finished, or at the ultimate end.  Fundamentally, consummation is an elastic concept, based on

_____

[3]  See 11 U.S.C. §§ 1101(2) (definition of substantial consummation of chapter 11 plan), 1112(b)(4)(M) (inability to effectuate substantial consummation of confirmed chapter 11 plan constitutes cause to dismiss or convert case), 1127(b) (confirmed chapter 11 plan may be modified before substantial consummation of plan), 1127(e) (individual chapter 11 debtor may modify confirmed chapter 11 plan regardless of whether plan was substantially consummated), 1141(d)(3) (chapter 11 plan confirmation does not discharge debtor if, among other things, debtor does not engage in business after plan consummation), 1142(b) (bankruptcy court's authority to direct execution or delivery of any instrument necessary for plan consummation), 1145(b)(1)(C) (definition of federal securities underwriter).

[4]  See 11 U.S.C. §§ 363(n) (in collusive bidding scheme, trustee may recover the difference between the property value and the consummated sale price), 741(2)(A)(iii) (definition of customer for purposes of § 741).

7

the particular circumstances in the case. In general, however, it involves more than mere approval of a sale and requires finalization of the sale; this will typically involve payment.

This plain reading of § 363(i) consummation is not inconsistent with the other Code sections that include the term; in particular, it is consistent with the definition of "substantial consummation" for chapter 11 plan purposes in § 1101(2). Substantial consummation is defined as far more than plan confirmation; it requires significant progress toward finalization of the actions required by the plan and the commencement of distributions. By analogy, consummation of a § 363 sale does not occur simply because the bankruptcy court enters an order approving the sale.

Here, the bankruptcy court determined that the K&C sale was not consummated for the purposes of § 363(i). We agree. The Agreement defined the transaction closing date as the date of entry of a final and nonappealable order approving the K&C sale. And, while a closing date is typically the date on which a deal is finalized and consideration conveyed, the Agreement provided for payment to the Trustee within 30 days of the closing date.

The path to sale consummation was thus cleared when the bankruptcy court granted the K&C sale motion and approved the Agreement. Judith, however, erected a barrier to consummation when she asserted her rights under § 363(i). True, the bankruptcy court entered the K&C Sale Order prior to Judith's completion of her purchase. Also true, the bankruptcy court denied the Debtor's motion for reconsideration of the K&C Sale Order, such that this order became final and nonappealable on May

8

23, 2012. See Fed. R. Bankr. P. 8002(b)(4); see also In re Lewis, 2013 WL 2367797, at *4. These events, however, did not constitute consummation of the K&C sale; they merely removed obstacles to consummation of a sale, a consummation that never occurred.

First, the Second Judith Sale Order provided that it supplanted the K&C Sale Order. Although the second order was entered on July 22, 2013, it was not entered on a new or different motion - instead, it related back to the § 363(i) motion, the bankruptcy court's grant of that motion, and entry of the First Judith Sale Order.

As a result, although the K&C Sale Order was final and nonappealable as of May 23, 2012, there existed an intervening order that sold the Claims to Judith. There could be no consummation of the K&C sale when the Claims were instead sold to Judith, as specifically authorized by the Code. In this respect, the term "superseded" is somewhat inapt. The bankruptcy court actually determined that Judith had the first right to purchase the Claims at the K&C purchase price. Had she failed to deliver payment, the K&C Sale Order allowed immediate sale to K&C. The Trustee was not free to re-market the Claims. Thus, by virtue of § 363(i), Judith's right to purchase the Claims was superior to K&C's purchase right, while K&C's right to purchase was superior to that of any other party.

Second, as the bankruptcy court determined and as K&C does not dispute, K&C never tendered the purchase price to the Trustee pursuant to the terms of the Agreement. In its defense, K&C attributes its failure to pay to the Trustee's instruction to

9

hold payment until the bankruptcy court resolved the competing sale motions. Whether the Trustee directed K&C to hold payment, however, is ultimately irrelevant – K&C never tendered payment and, therefore, the sale was never consummated.

Arguably, K&C has no one to blame but itself. It could have assumed certain risks and paid the purchase price immediately. It also could have eliminated or reduced any risks by obtaining a waiver of the Rule 6004(h) stay, seeking a § 363(m) finding that provided protection on appeal, or, again, immediately paying the purchase price. Instead, it provided Judith with sufficient time to assert her § 363(i) right and to prove that she had the ability to make good on her offer.

K&C's arguments as to alternative dates for consummation of the sale - February 22, 2012, the hearing date on which the bankruptcy court orally approved the K&C sale, and March 8, 2012, the date that the bankruptcy court entered the K&C Sale Order - similarly fail. For the reasons already discussed, on neither of those dates was the sale to K&C completed. Thus, the bankruptcy court did not err in determining that the K&C sale was not consummated at the time that Judith exercised her § 363(i) purchase right.

**2.    The Second Judith Sale Order supplanted the K&C Sale Order.**

K&C also argues that the bankruptcy court erred in superseding the K&C Sale Order. It disputes that the Second Judith Sale Order vacated the K&C Sale Order and that the "evidence on the record" supports the bankruptcy court's decision to supersede the prior order, one year after the K&C Sale Order

10

became final.

Generally, a bankruptcy court may enter an order that supersedes a prior order without formally vacating the antecedent order. Indeed, "supersede" means "[t]o annul, make void, or repeal by taking the place of." Black's Law Dictionary (9th ed. 2009). As a result, in many circumstances, the effect of a superseding order is the same as vacation of the prior order. That the bankruptcy court here did not "officially" vacate the K&C Sale Order is, thus, of no significance when considering the validity of the Second Judith Sale Order.[5] And as discussed above, the use of the term "supersede" is somewhat inexact. The bankruptcy court in substance merely recognized that Judith's § 363(i) rights were superior to K&C's rights under its prior order.

And, insofar as K&C argues that the final and nonappealable status of an order divests the bankruptcy court of authority to enter a superseding order, we emphatically reject that notion. K&C references no such authority in support of its proposition, nor could we locate any. Of course, the bankruptcy court may only supersede or vacate a prior order to the extent that no intervening rights have vested in reliance on the prior order. See Meyer v. Lenox (In re Lenox), 902 F.2d 737, 739-40 (9th Cir.

---

[5] The record, in fact, supports that this was a conscious decision made by the bankruptcy court. At the April 18 hearing, Debtor's counsel requested reconsideration of the K&C Sale Order for the very reason that K&C now seeks to exploit: the existence of two conflicting sale orders involving the same asset. In response, K&C's counsel – joined by Trustee's counsel – asserted that there would be no basis for the § 363(i) sale to Judith, if the bankruptcy court vacated the K&C Sale Order. The bankruptcy court accordingly denied the reconsideration motion.

11

1990) ("[B]ankruptcy courts . . . have the power to reconsider, modify or vacate their previous orders so long as no intervening rights have become vested in reliance on the orders."). Here, K&C identifies no such right. And § 363(i) expressly contemplates that exactly such an order may intervene. The bankruptcy court, thus, was "authorized" to enter the subsequent order.

Further, K&C's murky challenges to the evidence supporting the bankruptcy court's supersession determination and the timing of the Second Judith Sale Order are unreasonable. As discussed, the bankruptcy court entered the second order post-appeal, following this Panel's issued mandate; thus, the second order related back to entry of the First Judith Sale Order. The bankruptcy court effectively conditioned the K&C Sale Order; again, if Judith failed to tender payment, the K&C Sale Order allowed an immediate sale to K&C. Contrary to K&C's argument, the bankruptcy court was not required to weigh evidence, other than to make a determination as to whether any intervening rights vested in reliance on the K&C Sale Order.

K&C also urges this Panel to reverse the bankruptcy court's decision based on policy reasons. It contends that supplanting a § 363 sale order upsets the expectations of purchasers, discourages prospective purchasers from timely making an offer, undermines confidence in judicial sales, and results in chaos for the bankruptcy estate.

Once again, Judith was not an ordinary bidder at a § 363 sale. In enacting § 363(i), Congress specifically carved out a special provision for non-debtor spouses and property co-owners.

12

Further, the plain language of § 363(i) is clear and unambiguous. Thus, while it is true that policy generally favors the finality of § 363 sales, it is also clear that Congress contemplated that, in the course of a § 363 sale, two particular categories of persons can intervene and alternatively purchase property. This statutory risk is obvious. Indeed, the Rule 6004(h) stay, in part, allows a spouse or co-owner the time necessary to exercise this right. In this context, policy does not trump unambiguous statutory language.

Based on the foregoing, K&C has not shown that, for the purposes of § 363(i), the K&C sale was consummated or that the bankruptcy court erred in determining that the Second Judith Sale Order provided rights superior to the K&C Sale Order. It also has not shown that the bankruptcy court was somehow divested of authority to enter the Second Judith Sale Order.

**B.    The bankruptcy court did not abuse its discretion in approving the § 363(i) sale to Judith.**

K&C next challenges the bankruptcy court's approval of the § 363(i) sale. It predominantly argues that Judith lacked standing to assert a § 363(i) purchase right as the Claims were not community property; all of its arguments fail.

**1.    The Claims were community property.**

K&C challenges the Judith Sale Order on the grounds that Judith lacked standing to exercise a § 363(i) purchase right because the Claims were not community property. In particular, it contends that the Debtor's schedules – prepared by the same attorney who represented Judith in the sale – failed to designate the Claims as community property and, thus, that the Debtor's own

13

evidence refutes the community property presumption. It also contends that the Trustee failed to show that the Claims were community property assets.

Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during marriage while domiciled in California is community property. Cal. Fam. Code § 760. This includes recovery of or a contingent, future interest in the recovery of a lawsuit. See Vick v. DaCorsi, 110 Cal. App. 4th 206, 212 n.35 (2003) ("A cause of action to recover money damages, as well as the money recovered is a chose in action and therefore a form of personal property."); Barnett v. First Nat. Ins. Co. of Am., 184 Cal. App. 4th 1454, 1460 (2010) ("[A] cause of action for damages is community property, as is any recovery on that cause of action . . . . This is true whether the cause of action is for injury to real property or financial interests or for personal injuries."); see also In re Marriage of Biddle, 52 Cal. App. 4th 396, 400 (1997). Thus, there is a strong presumption that property acquired during the marriage is community property. See In re Marriage of Valli, 58 Cal. 4th 1396, 1400 (2014); see also Cal. Fam. Code §§ 760, 802. To rebut the presumption, the evidence must show "that another statute makes the property something other than community property." In re Marriage of Valli, 58 Cal. 4th at 1407 (Chin, J., concurring).

The bankruptcy court determined that the Claims were community property immediately before the commencement of the bankruptcy case and, thus, property of the estate. Here, it is undisputed that the Debtor and Judith were married and lived in

14

California when the Claims arose. The presumption of community property, thus, applies. K&C, as the party challenging the presumption, bore the burden of showing that the Claims were not community property. See In re Marriage of Weaver, 127 Cal. App. 4th 858, 864 (2005) (party contesting community property status bears burden of rebutting presumption). It advanced no evidence in this regard and failed to meet its evidentiary burden.

The fact that the Debtor did not schedule the Claims as community property did not preclude Judith from asserting a community property interest in the Claims. She was not a co-debtor, and she did not sign the schedules. Therefore, the Debtor's schedules had no preclusive or estoppel effect on Judith's ability to exercise independently her § 363(i) purchase right. On this record, there was no error in the bankruptcy court's determination that the Claims were community property subject to § 363(i).

**2. The remainder of K&C's arguments lack merit, are irrelevant, or both.**

K&C's remaining arguments can be dismissed summarily. The fact that the parties executed the Agreement prior to approval by the bankruptcy court did not divest the estate of its interest in the Claims or the Trustee of his ability to sell the Claims. Nor did executing the Agreement, as K&C claimed at oral argument, immediately transfer title of the Claims. This was a sale outside the ordinary course of business, the Trustee could only sell the Claims after receiving approval from the bankruptcy court, and the effect of any order approving the sale was stayed for a period of time that allowed Judith to exercise her § 363(i)

15

rights.  See 11 U.S.C. § 363(b); Fed. R. Bankr. P. 6004(h). Moreover, we reject the notion that whatever rights the Trustee and K&C had under the Agreement could somehow deprive Judith of her statutory § 363(i) rights.  Simply put, the parties could not waive Judith's § 363(i) rights for her.

Nor did Judith waive her § 363(i) rights when she attended the K&C sale but did not express interest in purchasing the Claims at that time; the Code merely required that she purchase the Claims prior to consummation of the K&C sale.  And, finally, the argument that Judith did not pay the purchase price offered by K&C, because she did not provide compensation equal to the cash price plus the value of the release, also fails.  This argument has merit in the abstract, but here K&C failed to provide any evidence of the value of the release.  The Trustee, however, explained that it was valueless from the perspective of the estate because any K&C judgment would never be paid.  Here, the estate's assets would be exhausted prior to payment in full of priority tax claims.  The bankruptcy court, thus, implicitly rejected these arguments in reaching its determinations.  On this record, K&C has not persuaded us that this was error.

**CONCLUSION**

Based on the foregoing, we AFFIRM the bankruptcy court.

16