Filed 9/15/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE ex rel. ALLSTATE INSURANCE COMPANY et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> DANIEL H. DAHAN et al., <br><br> Defendants and Appellants. | B259799 <br><br> (Los Angeles County <br> Super. Ct. No. BC397695) |

APPEAL from an order of the Superior Court of Los Angeles County, Ernest M. Hiroshige, Judge.  Appeal dismissed.

Lerner & McDonald and Kenneth E. McDonald for Defendants and Appellants.

Knox Ricksen, Thomas E. Fraysse, Reid M. Miller and Ryan G. Jacobson for Plaintiffs and Respondents.

—————————————

INTRODUCTION

A private party who brings a qui tam[1] action for insurance fraud under Insurance Code section 1871.7,[2] where the district attorney and the Insurance Commissioner decline to intervene, is entitled to a portion of the proceeds of the action plus fees and costs. (*Id.*, subd. (g)(2)(A).) In this case we are confronted with the novel question whether the judgment-debtor defendants in such an action have standing to challenge the trial court's post-judgment order allocating the judgment amount between the prevailing plaintiffs, i.e., the private party and the State. We hold that judgment-debtor defendants in qui tam insurance fraud actions are not aggrieved by such allocation orders under section 1871.7, subdivision (g)(2)(A), with the result that they do not have standing to appeal. Accordingly, we dismiss their appeal.

FACTUAL AND PROCEDURAL BACKGROUND

Allstate Insurance Company, et al. (Allstate)[3] as private-party plaintiff or "relator,"[4] brought a qui tam action on behalf of itself and the State of California (together plaintiffs), against defendants Daniel H. Dahan and his affiliated corporation, Progressive Diagnostic Imaging, Inc. (together defendants), pursuant to the California Insurance Frauds Prevention Act (§ 1871.7 (IFPA)). Neither the district attorney nor the

---

[1]     The term "qui tam" is short for the expression " 'qui tam pro domino rege quam pro se ipso in hac parte sequitur,' " which in Latin means, " ' "who pursues this action on our Lord the King's behalf *as well as his own*".' [Citations.]" (*People ex rel. Allstate Ins. Co. v. Weitzman* (2003) 107 Cal.App.4th 534, 538, italics added (*Weitzman*).)

[2]     All further statutory references are to the Insurance Code, unless otherwise noted.

[3]     The private-party plaintiffs are Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, Deerbrook Insurance Company, Allstate County Mutual Insurance Company, and Allstate Fire and Casualty Insurance Company.

[4]     "A 'relator' has been described thus: 'The real party in interest in whose name a state or an attorney general brings a lawsuit. . . . A person who furnishes information on which a civil or criminal case is based; an informer.' " (*Weitzman*, *supra*, 107 Cal.App.4th at p. 538, quoting from Black's Law Dict. (7th ed. 1999) p. 1292, col. 1 & *In re Veterans' Industries, Inc.* (1970) 8 Cal.App.3d 902, 925.)

2

Insurance Commissioner opted to take over the lawsuit. The trial court entered judgment against defendants, finding that plaintiffs had proven 487 claims for violation of Penal Code section 550 by defendants, and awarding a total of $7,010,668.40, comprised of $5,788,516.78 in civil penalties and assessments, and $1,222,151.62 in attorney fees, costs, and expenses of investigation. (The qui tam judgment).

Following entry of the qui tam judgment, Allstate began efforts to collect it. During its investigation, Allstate learned of a series of real estate transactions conducted by defendants designed to transfer away their assets. Allstate, on behalf of the State, filed an action to set aside the fraudulent transfers of real and personal property. (Case No. BC527960.)

Defendants demurred to the operative complaint on the ground that Allstate lacked standing to proceed with the fraudulent transfer suit, in part because the judgment in the qui tam action was never allocated between Allstate and the People pursuant to section 1871.7, subdivision (g)(2)(A), with the result that Allstate had no stake in the qui tam judgment or authority to pursue collection of that judgment from defendants. Defendants argued that section 1871.7, subdivision (g)(2)(A) requires that the court determine the amount of the qui tam judgment the relator may collect, and the relator may only enforce the judgment up to that allocated amount, because the remainder of the proceeds belongs to the State.

Allstate obtained a stay of the fraudulent conveyance action and returned to the qui tam court where it filed a motion for an order allocating the qui tam judgment proceeds. The motion was based on a stipulation entered into between the People and Allstate allocating to Allstate 50 percent of the civil penalties and assessments ($2,894,258.39), plus the reasonable attorney fees and costs the court had awarded ($1,222,151.62), for a total of $4,116,410.01. (§ 1871.7, subd. (g)(2)(A).) The People agreed to receive the remaining 50 percent of the civil penalties and assessments.

Defendants opposed the allocation motion. They argued, inter alia, that the trial court lacked jurisdiction to enter the order because the qui tam judgment had long since become final depriving the court of power to " 'materially vary[]' " it. Allstate responded

3

that the allocation order did not " 'materially vary the judgment,' " which remained intact. Rather, Allstate argued that the allocation order simply apportioned the judgment proceeds between judgment creditors and thus had no impact on either the rights of the People and Allstate as plaintiffs and judgment creditors on the one hand, or the obligations of defendants as judgment debtors, on the other hand. Regardless of the outcome of the allocation motion, Allstate argued, defendants remain obligated to pay the $7,010,668.40 judgment.

The trial court in the instant qui tam action granted Allstate's allocation motion and entered the stipulation as the judgment. Defendants filed their timely appeal.

We requested supplemental briefing from the parties (Gov. Code, § 68081) to address whether defendants were aggrieved by the allocation order such that they would have standing to appeal it.

DISCUSSION

The right to appeal is statutory. (*Conservatorship of Gregory D.* (2013) 214 Cal.App.4th 62, 67.) Code of Civil Procedure section 902 provides that "[a]ny party *aggrieved* may appeal" from a judgment. (Italics added.) " ' "One is considered 'aggrieved' whose rights or interests are injuriously affected by the judgment." [Citation.]' " (*Conservatorship of Gregory D.*, at p. 67.) The appellant's "interest ' "must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment." ' [Citation.]" (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737.) Conversely, " 'A party who is not aggrieved by an order or judgment has no standing to attack it on appeal." [Citation.]' [Citation.]" (*Conservatorship of Gregory D.*, at p. 67.) "Thus, notwithstanding an appealable judgment or order, '[a]n appeal may be taken only by a party who has standing to appeal. [Citation.] This rule is jurisdictional. [Citation.]' [Citation.] It cannot be waived. [Citation.]" (*Ibid.*)

1. *The Qui Tam procedure*

Anyone engaging in insurance fraud in violation of Penal Code sections 549, 550, or 551 is subject to penalties and assessments. (§ 1871.7, subd. (b).) Section 1871.7 provides for civil penalties of not less than $5,000 to $10,000 for each fraudulent claim

4

presented to an insurance company, plus assessments of not more than three times the amount of each claim for compensation, and equitable relief. (*Id.*, subd. (b).)

Section 1871.7 authorizes "any interested persons, including an insurer" to bring a qui tam civil action "*for the person and* for the State of California" to recover penalties and equitable relief for fraudulent insurance claims. (*Id.*, subds. (b) & (e)(1), italics added.) Procedurally, the interested person or relator files a complaint and serves it on the district attorney and the Insurance Commissioner. (*Id.*, subd. (e)(2).) The complaint is sealed in camera for at least 60 days, during which time the district attorney and the Insurance Commissioner may elect to intervene (*ibid.*) and conduct the action themselves.

When the district attorney intervenes in the qui tam insurance fraud action, subdivision (g)(1) of section 1871.7 entitles the private-party relator to a "bounty" of between 30 and 40 percent "of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action." (*Ibid.*; see also *Weitzman*, *supra*, 107 Cal.App.4th at p. 547.)

When the state declines to intervene, as in this case, the relator tries the action and is entitled by subdivision (g)(2)(A) of section 1871.7 to a "bounty" of between 40 and 50 percent of the proceeds of the action "for collecting the civil penalty and damages" (*ibid.*), along with "an amount for reasonable expenses that the court finds to have been necessarily incurred, plus reasonable attorney's fees and costs" which fees and costs are imposed against the defendant. (*Ibid.*)[5]

---

[5]  Section 1871.7, subdivision (g)(2)(A) reads: "If the district attorney or commissioner does not proceed with an action under this section, the person bringing the action or settling the claim shall receive an amount that the court decides is reasonable *for collecting the civil penalty and damages*. Except as provided in subparagraph (B), the amount shall not be less than 40 percent and not more than 50 percent of the proceeds of the action or settlement and shall be paid out of the proceeds. That person shall also receive an amount for reasonable expenses that the court finds to have been necessarily incurred, plus reasonable attorney's fees and costs. All of those attorney's fees and costs shall be imposed against the defendant. The parties shall serve the commissioner and the local district attorney with complete copies of any and all settlement agreements, and

5

2. *Defendants are not aggrieved by the order they seek to appeal*.

Defendants acknowledge that "this Appeal has no effect on that [qui tam] Judgment" and does not alter defendants' obligation to pay the $7 million. Notwithstanding their apparent concession that they are not aggrieved by the order they appeal, defendants construct a theory under which they have been injured by the allocation order: Defendants argue that the allocation order "*changed* the legal rights of *Allstate* to enable Allstate to arguably be able to legally collect on the judgment" because the allocation order "arguably legitimizes" the insurer's collection efforts by conferring standing on Allstate. (Italics added.) Citing no authority, defendants argue that Allstate could only enforce the judgment up to the amount of the allocation order, and so until the court allocated the judgment between the People and Allstate, the latter had no right to *collect* any proceeds. In essence, defendants assume that an allocation is a prerequisite or condition precedent to enforcement of a qui tam judgment by an insurer-relator when the State has not intervened.

However, based on a plain reading of section 1871.7, subdivision (g)(2)(A), the bounty in cases in which the People do not intervene *is* for trying and collecting the judgment. When the words of a statute are clear and unambiguous, there is no need for statutory construction or resort to other indicia of legislative intent, such as legislative history. (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349.) Section 1871.7, subdivision (g)(2)(A) states, "If the district attorney or commissioner does not proceed with an action under this section, the person bringing the action or settling the claim shall receive an amount that the court decides is reasonable *for collecting the civil penalty and damages* . . . [T]he amount shall not be less than 40 percent and not more than 50 percent of the proceeds of the action . . . and shall be paid

terms and conditions, for actions brought under this article at least 10 days prior to filing any motion for allocation with the court under this paragraph. The court may allocate the funds pursuant to the settlement agreement if, after the court's ruling on objection by the commissioner or the local district attorney, if any, the court finds it is in the interests of justice to follow the settlement agreement." (Italics added.)

6

out of the proceeds." (Italics added.)[6] To "collect" is "[t]o receive payment." [¶] "To collect a debt or claim is to obtain payment . . . ." (Black's Law Dict. (6th ed. 1990) p. 263, col.1.) Thus, by employing the word "collecting" in section 1871.7, subdivision (g)(2)(A), the Legislature intended that, when the State does not intervene, the insurer-relator is the plaintiff who levies on the judgment.

Our conclusion that the bounty for the prosecuting relator is for trying *and* collecting the judgment is bolstered by a comparison of subdivisions (g)(2)(A) with (g)(1), in section 1871.7. (*Bostick v. Flex Equipment Co., Inc*. (2007) 147 Cal.App.4th 80, 107, conc. opn. of Croskey, J. ["A court must harmonize a statute with other laws so as to give effect to all and avoid anomalies, if possible"].) Whereas the section 1871.7, subdivision (g)(2)(A) bounty is for "*collecting* the civil penalty and damages," the recovery awarded under subdivision (g)(1)(A)(i) - when the district attorney takes over the case - is a percentage "*of the proceeds* of the action or settlement of the claim." (Italics added.) Under the latter subdivision, the intervening People, not the relator, would collect the judgment. Thus, subdivision (g)(2)(A), relevant here because the State did *not* adopt the action, recognizes that the relator, in addition to trying the insurance fraud action, is the party who collects or levies on the ensuing judgment. "The remaining proceeds *revert* to the State . . . ." (58 Cal.Jur.3d (2012) State of California, § 126, italics added.) That is, after collecting on the judgment, Allstate would pay the excess over its allocation to the People. "[T]he money generated by the cause of action that the [private-party] plaintiff recovers [in a qui tam action] is property owned by the plaintiff." (11 Witkin, Summary of Cal. Law (10th ed. 2005) Community Property, § 111, p. 673, discussing *In re Marriage of Biddle* (1997) 52 Cal.App.4th 396, 399 [community property interests in a qui tam action].) The reading of section 1871.7, subdivision

---

**6**     Also, in cases where the People opted not to intervene, subdivision (g)(2)(A) of section 1871.7 awards the direct-victim relator reasonable expenses, attorney's fees, and costs "imposed against the defendant," *in addition to the bounty*. The judgment here already awarded Allstate reasonable expenses, attorney fees and costs incurred by Allstate who has the right to collect that amount also.

(g)(2)(A) advocated by defendant would result in the incongruous situation in which the successful insurer-relator would be unable to levy on the judgment it has won through its own efforts until the bounty is allocated between it and the People who had abandoned prosecution of the action.

The right to levy on the $7 million qui tam judgment was Allstate's for the additional reason that the insurer was the direct victim of defendants' insurance fraud. Unlike the federal False Claims Act (31 U.S.C. § 3730(d)) where the relators are people with knowledge of the fraud but not victims of that wrong, under California's IFPA, the direct victims of the fraud are the relator-insurers and their insureds. (*Weitzman*, *supra*, 107 Cal.App.4th at pp. 561-562.) Allstate, as the direct victim who prosecuted the action and prevailed without the People's participation, necessarily had the right to collect the civil penalty and damages *irrespective of an allocation order.* To hold otherwise would be absurd given the California qui tam IFPA action is brought, not merely on behalf of the People, but "*for the person and* for the State of California" (§ 1871.7, subd. (e)(1), italics added), and where the qui tam judgment here, drafted by defendants, was written in favor of *all* plaintiffs, not just the People. Therefore, an allocation order is not a prerequisite to the Allstate's right to enforce the judgment; it neither "changed" nor "legitimized" Allstate's legal right to *collect* the proceeds of the action from defendants, a right Allstate always had as relator.

Defendants argue, citing *People ex rel. Strathmann v. Acacia Research Corp.* (2012) 210 Cal.App.4th 487 (*Strathmann*) that Allstate admits that the relator is not entitled to any proceeds absent a court-ordered allocation. Regardless of what Allstate admits, addressing the legal question de novo (*American Liberty Bail Bonds, Inc. v. Garamendi* (2006) 141 Cal.App.4th 1044, 1052 [we exercise our independent interpretation of the Insurance Code absent disputed facts]), *Strathmann* does not stand for the proposition that an allocation order is a prerequisite to collecting the judgment. *Strathmann* stated, "[T]he 'relator[]' stands in the shoes of the People of the State of California, who are deemed to be the real party in interest. [Citations.] The relator in a qui tam action under section 1871.7 does not personally recover damages but, if

8

successful, receives a substantial percentage of the recovery as a bounty." (*Strathmann*, at p. 500.) For this proposition, *Strathmann* cited generally to subdivision (g) of section 1871.7, without distinguishing between the wording in subdivisions (g)(1) (State-prosecuted actions) and (g)(2)(A) (insurer-prosecuted actions).[7]

As the allocation order is not a prerequisite to Allstate's ability to levy on the qui tam judgment under section 1871.7, subdivision (g)(2)(A), and given defendants' concession that the appeal has no effect on, and does not alter their obligation to pay the $7 million qui tam judgment, defendants are not aggrieved by the allocation order and have no standing to appeal from it. (Cf. *U.S. ex rel. Taxpayers Against Fraud v. Gen. Elec.* (6th Cir. 1994) 41 F.3d 1032, 1046 [under federal False Claims Act "the Relators'-Share Litigation did not directly involve the *qui tam* defendants . . . [who] *had no legal standing or right to participate in the proceedings*," italics added]; cf. *Kim v. Yi* (2006) 139 Cal.App.4th 543, 549-551 [proceeding for apportionment of damages between judgment creditors is a special proceeding that did not involve any defendants].)[8] In the absence of standing by defendants as appellants, this court has no jurisdiction to hear the appeal. (*Conservatorship of Gregory D.*, *supra*, 214 Cal.App.4th at p. 69.)

---

[7] We are unpersuaded by the remaining cases cited by defendants in their letter brief.

[8] Allstate argues that the California False Claims Act (Gov. Code, § 12650 et seq.) was patterned after the federal False Claims Act (31 U.S.C. § 3730) and encourages us to look to federal cases applying the qui tam provisions of the federal statute. While the California IFPA in section 1871.7 differs from the federal False Claims Act in "several significant respects" (*Weitzman*, *supra*, 107 Cal.App.4th at p. 561), the two Acts are identical with respect to the bounty when the government declines to adopt the action. (Compare § 1871.7, subd. (g)(2)(A) ["the person bringing the action or settling the claim shall receive an amount that the court decides is reasonable for collecting the civil penalty and damages"] & 31 U.S.C. § 3730(d)(2) ["the person bringing the action or settling the claim shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages"].)

DISPOSITION

The appeal is dismissed.  Allstate is to recover its costs of this proceeding.

**CERTIFIED FOR PUBLICATION**

ALDRICH, J.

We concur:

EDMON, P. J.

LAVIN, J.

10