Filed 10/15/15  Alonzo v. First Transit CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ANGEL ALONZO et al., | B253699 |
| Plaintiffs and Respondents, | |
| v. | (Los Angeles County<br>Super. Ct. No. BC433932) |
| FIRST TRANSIT, INC., | |
| Defendant and Respondent; | |
| ERIC P. CLARKE, | |
| Movant and Appellant. | |

APPEAL from an order and a judgment of the Superior Court of Los Angeles County, Elihu M. Berle, Judge.  Order affirmed, judgment reversed.

Law Offices of Mark Yablonovich, Mark Yablonovich, Patrick J. Clifford, and Joseph Hoff for Movant and Appellant.

Sundeen Salinas & Pyle, Hunter Pyle and Mana Barari for Plaintiffs and Respondents.

Littler Mendelson, Theodore R. Scott and David J. Dow for Defendant and Respondent.

_____

## INTRODUCTION

Plaintiffs, a group of drivers employed by defendant First Transit, Inc., filed a class action alleging various wage and hour claims. Eric P. Clarke was a member of the class, but he opted out several months after the trial court certified the class. Plaintiffs and First Transit subsequently reached a settlement that resolved the wage and hour claims as well as claims under the Private Attorneys General Act (PAGA) (Lab. Code, § 2699).[1]

Shortly before the hearing on final approval of proposed settlement, Clarke filed an ex parte application for leave to intervene. The court denied Clarke's ex parte application, gave final approval to the settlement agreement, and entered a stipulated judgment under Code of Civil Procedure section 664.6. Clarke appeals from the order denying his ex parte application for leave to intervene and the judgment entered after the court approved the settlement. We affirm the order denying intervention, but we reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Clarke's Employment*

First Transit, a private contractor that provides bus and other public transit services throughout California, hired Clarke in February 2000 to drive bus routes in Los Angeles. First Transit assigned Clarke to the bus routes associated with its Community Downtown Area Short Hop (DASH) Package 6. Clarke drove buses on DASH Package 6 routes between February 2000 and June 2006. First Transit terminated his employment in February 2007.

---

[1]     All undesignated statutory references are to the Labor Code.

B. *The Class Action*

In March 2010 plaintiffs filed a class complaint alleging that First Transit had violated Labor Code provisions governing rest breaks (§ 226.7), wage statements (§ 226), and the payment of compensation after an employee is discharged or resigns (§§ 201, 202, & 203). The complaint also alleged violation of the Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200 et seq.).

The second amended complaint defined the class as follows: "All bus operators that worked for FIRST TRANSIT, driving bus routes associated with Community DASH Packages 2 and/or 6 in Los Angeles County, at any time during the Class Period in unit(s) represented for purposes of collective bargaining by Teamsters Local Union 572." The "Class Period" included members of the class who worked for First Transit on or after August 13, 2003.

In July 2012 the trial court certified the class defined in the second amended complaint. Clarke was a member of the class, but he opted out in October 2012.

In February 2013 the parties, after having conducted discovery, participated in mediation and reached a settlement agreement.[2] In June 2013 the trial court preliminarily approved a revised settlement agreement. Pursuant to this agreement, plaintiffs agreed to amend the complaint to add a claim for statutory penalties under PAGA. First Transit agreed to pay $2 million to settle the plaintiffs' class claims, $10,000 of which First Transit agreed to pay to the California Labor and Workforce Development Agency to settle the PAGA claims. The settlement agreement distributed no portion of the $10,000 allocated to the PAGA claims to the aggrieved employees. The court set the final approval hearing for October 8, 2013.

---

[2] Counsel for Clarke had participated in an earlier mediation session but was excluded from the February 2013 session.

3

Following the trial court's preliminary approval, the class representatives provided notice of the settlement to the class members. The class members had until September 8, 2013 to submit claims. By that date, 350 members had submitted claims, which accounted for 83 percent of the $2 million allotted by the settlement. None of the class members objected to the proposed settlement.

On September 11, 2013 plaintiffs filed a third amended complaint adding the PAGA claims. The PAGA claims sought civil penalties for First Transit's Labor Code violations and restitution for the UCL violations.

On October 2, 2013 Clarke filed an ex parte application for leave to intervene. Clarke asserted that he was entitled to intervene because, among other reasons, he had an interest in the parties' resolution of the PAGA claims, which he claimed the parties had drastically undervalued, and the parties had colluded in reaching the proposed settlement.

On October 8, 2013 the trial court heard Clarke's ex parte application. When questioned by the court about why he had waited until less than a week before the final approval hearing to file an ex parte application for leave to intervene, counsel for Clarke admitted that he became aware in late July 2013 that the parties were settling the PAGA claims. Counsel for Clarke explained that he had not sought intervention earlier because he had first sought unsuccessfully to enjoin the settlement in a separate lawsuit he had previously filed against First Transit.[3]

---

[3]   In August 2007 Clarke filed a class complaint against First Transit in Los Angeles Superior Court. First Transit removed the case to federal district court. In 2010 the district court dismissed the case because Clarke's claims were barred by the statute of limitations. In January 2008 Clarke filed a second lawsuit against First Transit in Los Angeles Superior Court. In the second lawsuit, Clarke sought only civil penalties under PAGA for the same conduct alleged in his first lawsuit. In February 2009 the court stayed the second lawsuit. In September 2013 Clarke sought an order lifting the stay in the second lawsuit so that he could obtain an injunction to enjoin the parties from finalizing the class action settlement in this action.

On the merits of the application, Clarke argued that he had a sufficient interest to intervene because the settlement of the PAGA claims would collaterally estop him from bringing his PAGA claims. He claimed that the parties had settled the PAGA claims with the intent to prevent him from pursuing his PAGA claims.

The trial court denied Clarke's ex parte application as untimely. The court stated that Clarke had failed to justify why he waited until less than a week before the final approval hearing to seek intervention. The court also found that Clarke had failed to demonstrate that his interest in intervening outweighed the parties' interests in settling the lawsuit. The court reasoned that Clarke's decision not to rejoin the class after the parties had reached a settlement and his considerable delay in seeking to intervene after learning about the parties' intention of settling the PAGA claims demonstrated that his interest did not outweigh the interests of the parties in settling the case.

After denying Clarke's ex parte application, the court approved the settlement. The court found that the parties had conducted sufficient discovery to inform their negotiations, and that they had conducted their negotiations in good faith and at arm's length. The court also found that the value of the settlement was reasonable and adequate because it exceeded First Transit's maximum exposure on the Labor Code and UCL claims. The court also found that the attorneys for the class had given proper notice to the class members, and the court approved $666,666 in attorneys' fees for class counsel and $66,233.70 in costs. Clarke appeals from the trial court's order denying his ex parte application for leave to intervene and from the judgment giving final approval of the settlement agreement.

**DISCUSSION**

A. *The Trial Court Did Not Abuse Its Discretion in Denying Clarke's Ex Parte Application for Leave To Intervene*

Clarke argues that the trial court abused its discretion in denying his ex parte application for leave to intervene as untimely because he sought intervention soon after

5

plaintiffs filed their amended class action complaint to allege the PAGA claims. Because Clarke unreasonably delayed in seeking intervention, the trial court properly denied his application.

Code of Civil Procedure section 387 allows a nonparty to intervene in a lawsuit under certain circumstances. Intervention may be mandatory or permissive depending on the nature of the nonparty's interest in the litigation. (See Code Civ. Proc., § 387; *Siena Court Homeowners Assn. v. Green Valley Corp.* (2008) 164 Cal.App.4th 1416, 1423-1428.) A nonparty has an unconditional right to intervene where the nonparty has an interest in the property or transaction underlying the litigation that may be impaired by resolution of the action and the existing parties do not adequately protect that interest. (*Siena Court Homeowners Assn. v. Green Valley Corp.*, *supra*, 164 Cal.App.4th at pp. 1423-1424.) A nonparty may also have a mandatory right to intervene where authorized by statute. (See Code Civ. Proc., § 387, subd. (b) [court must allow a nonparty to intervene "[i]f any provision of law confers an unconditional right to intervene"].) Intervention is permissive where the person seeking to intervene has an interest in the subject matter of the litigation or an interest in common with, or in opposition to, the parties to the lawsuit. (Code Civ. Proc., § 387, subd. (a).) The nonparty's interest "must be direct rather than consequential, and it must be an interest that is capable of determination in the action." (*Royal Indem. Co. v. United Enterprises, Inc.* (2008) 162 Cal.App.4th 194, 203-204.)[4]

Whether the nonparty is seeking mandatory or permissive intervention, the application to intervene must be timely. (Code Civ. Proc., § 387; see *Marken v. Santa Monica-Malibu Unified School Dist.* (2012) 202 Cal.App.4th 1250, 1277.) Even where a nonparty has an unconditional right to intervene, the court may deny the application if it is untimely. (*Marken*, *supra*, 202 Cal.App.4th at p. 1277.) Although there is no statutory

---

[4]     Clarke did not specify whether he was seeking mandatory or permissive intervention.

time limit on seeking intervention, an unreasonable delay in filing an application for leave to intervene is a proper ground for denying the application. (See *ibid.* ["'it is the general rule that a right to intervene should be asserted within a reasonable time and the intervener must not be guilty of an unreasonable delay after knowledge of the suit'"]; *Noya v. A.W. Coulter Trucking* (2006) 143 Cal.App.4th 838, 842 [court did not abuse its discretion by denying nonparty insurer's application as untimely where the insurer knew the litigation had been ongoing for several years and did not seek to intervene until after the parties had reached a settlement].) "An order denying intervention is reviewed under the deferential abuse-of-discretion standard." (*Noya*, *supra*, 143 Cal.App.4th at p. 842.)

Although the trial court denied his application as untimely, Clarke devotes little argument on appeal to the issue of timeliness. Clarke contends that he did not discover that the parties were going to settle the PAGA claims until plaintiffs filed the third amended complaint on September 11, 2013, about three weeks before he filed his ex parte application. He argues that his ex parte application was timely because he filed it "shortly" thereafter.

As his attorney admitted at the hearing on his application, however, Clarke knew in July 2013 that the parties intended to settle the PAGA claims. Clarke also knew or reasonably should have known in June 2013 that the parties intended to settle the PAGA claims because by then the court had preliminarily approved the settlement agreement and set a hearing date for final approval. Yet Clarke did not attempt to intervene until October 2013, several weeks after the deadline for class members to submit claims under the settlement agreement. Clarke did not provide a satisfactory explanation for why he waited to seek intervention until more than three months after preliminary approval of the settlement, more than two months after admittedly learning the settlement would include the PAGA claims, nearly one month after the deadline for class members to submit claims, and less than one week before the hearing on final approval of the settlement. The trial court did not abuse its discretion in denying Clarke's eleventh-hour request to intervene.

7

B. *Clarke Has Standing To Appeal from the Judgment*

Plaintiffs and First Transit argue that Clarke lacks standing to appeal from the judgment giving final approval to the settlement agreement because he is not a party to the action and he did not object to the settlement agreement or file a motion to vacate the judgment. Clarke argues that, despite the trial court's denial of his ex parte application for leave to intervene, he has standing to challenge the judgment because resolution of the PAGA claims in this action will bar the PAGA claims alleged in his lawsuit.

A person must have standing to appeal from an order or a judgment. (*Conservatorship of Gregory D.* (2013) 214 Cal.App.4th 62, 67.) Generally, a person must be a party of record and aggrieved by the challenged judgment to have standing. (Code Civ. Proc., § 902; *Bridgeman v. Allen* (2013) 219 Cal.App.4th 288, 292.) A nonparty may have standing to appeal, however, where "a judgment or order has a res judicata effect on the nonparty." (*In re Clergy Cases I* (2010) 188 Cal.App.4th 1224, 1233; see *Marsh v. Mountain Zephyr, Inc.* (1996) 43 Cal.App.4th 289, 295 ["'[a] person who would be bound by the doctrine of res judicata, whether or not a party of record, is . . . [entitled] to appeal'"].) Clarke has standing to appeal the judgment because under *Arias v. Superior Court* (2009) 46 Cal.4th 969 (*Arias*) the settlement agreement will preclude him from pursuing his PAGA claims.

In *Arias*, the California Supreme Court decided whether a representative PAGA claim must satisfy class action requirements. (*Arias*, *supra*, 46 Cal.4th at pp. 981-987.) The defendant employer in that case argued that PAGA claims had to satisfy class action requirements because to allow employees to file separate PAGA lawsuits would unfairly subject employers to open-ended litigation or "one-way intervention." (*Arias*, at p. 985.) The defendant in *Arias* argued that, if class action requirements did not apply to PAGA claims, individual employees aggrieved by the same conduct could file successive lawsuits until one employee obtained a favorable judgment, after which all other aggrieved employees could use the favorable judgment to bind the defendant in their lawsuits. (*Ibid.*)

The Supreme Court rejected the defendant's arguments and held that PAGA claims need not satisfy class action requirements. (*Arias*, *supra*, 46 Cal.4th at pp. 984-987.) The Supreme Court explained that, because an aggrieved employee suing under PAGA acts as the agent of the state's labor law enforcement agencies, and because the state's agencies represent the interests of all aggrieved employees, all nonparty aggrieved employees are in privity with an employee suing under PAGA and therefore are bound by the employee's PAGA judgment. (*Arias*, at p. 986.) Thus, under *Arias*, a judgment in a PAGA action brought by a single employee, or a group of employees, precludes all aggrieved employees who were not named in that action from later bringing PAGA claims against the same defendant. (See *Arias*, at p. 986 ["nonparty employees as well as the government are bound by the judgment in an action brought under [PAGA]"]; accord, *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 380 (*Iskanian*).) Such a judgment does not, however, preclude nonparty aggrieved employees from pursuing remedies other than civil penalties based on the same underlying Labor Code violations. (*Arias*, 46 Cal.4th at p. 986; see *Baumann v. Chase Inv. Servs. Corp.* (9th Cir. 2014) 747 F.3d 1117, 1123 ["'nonparty employees, because they were not given notice of the action or afforded an opportunity to be heard, are not bound by the judgment as to remedies other than civil penalties'"].)

Clarke was employed by First Transit throughout the period covering the Labor Code violations that are the bases of the PAGA claims in this action. During that period, Clarke, like members of the class, drove buses on First Transit's DASH Package 6 routes. In his proposed complaint in intervention, Clarke alleges that he was subject to the same Labor Code violations as the class members who were working the DASH Package 6 routes at the same time. Thus, Clarke's PAGA claims seek to collect the same civil penalties that plaintiffs' PAGA claims seek to collect in this action. Thus, the judgment in this action will bar the PAGA claims alleged in Clarke's action. (See *Arias*, *supra*, 46 Cal.4th at p. 986.)

9

Citing to language in the court's opinion in *Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562 (*Villacres*), plaintiffs and First Transit argue that the settlement agreement will not preclude Clarke from pursuing his separate PAGA claims against First Transit. In *Villacres* the plaintiff, who was a member of a class of security guards in a prior lawsuit involving Labor Code claims against his former employer, filed a separate PAGA action against the same employer after the prior class action had settled. (*Villacres*, at p. 573.) The settlement agreement in the prior class action contained a provision releasing the employer from "any and all claims" that could have been asserted against it arising out of the same conduct underlying the Labor Code claims of the class. (*Villacres*, at p. 572.) The settlement agreement did not mention PAGA penalties. (See *Villacres*, at pp. 570-573.) The plaintiff in *Villacres* did not opt out of the prior class, object to the settlement agreement in the prior class action, or attempt to intervene in the prior class action to assert his PAGA claims. (*Villacres*, at p. 574.)

The trial court in *Villacres* granted the defendant employer's motion for summary judgment because the class action settlement in the prior lawsuit, which bound the plaintiff, barred his PAGA claims under the doctrine of res judicata. (*Villacres*, *supra*, 189 Cal.App.4th at p. 574.) The Court of Appeal affirmed. The court explained that, in the prior class action, the plaintiff had received notice of the class settlement and did not object to the settlement, seek to intervene in the class action to preserve his PAGA claims, or opt out of the class action to pursue his PAGA claims independently. (*Villacres*, at pp. 581-582.) Because the class settlement released the defendant employer from liability for any and all claims that could have been raised based on the employer's conduct, and because the plaintiff's PAGA claims arose out of that conduct, the plaintiff's participation in the class settlement barred him from later seeking additional penalties based on the same conduct by the employer. (*Villacres*, at pp. 582-587.) As part of its analysis, the Court of Appeal noted, in dicta and without citing *Arias*, that the plaintiff in the subsequent class action "could have easily preserved his PAGA claims by opting out of the class" in the prior class action. (*Villacres*, at p. 583.) Plaintiffs and

10

First Transit argue that this language demonstrates that Clarke will not be bound by their settlement agreement because Clarke opted out of the class.

*Villacres* is distinguishable. Unlike the plaintiffs in this case, the plaintiffs in *Villacres* never pleaded or sought recovery for any PAGA claims. (See *Villacres*, *supra*, 189 Cal.App.4th at p. 572.) Thus, in *Villacres*, the trial court did not enter a judgment on any PAGA claims after it had given final approval to the settlement agreement. In addition, the court in *Villacres* stated that the plaintiff's PAGA claims were barred by res judicata because the plaintiff had participated in the prior class action, and that, had the plaintiff opted out of the class in the prior lawsuit, the terms of the class settlement would not have barred his PAGA claims. (See *Villacres*, at pp. 581-582.) The court in *Villacres*, however, did not discuss whether *Arias* would have barred the plaintiff's PAGA claims if he had opted out of the class in the prior lawsuit. (See *Villacres*, at pp. 578-593.) And, to the extent plaintiffs and First Transit urge us to extend the dicta from the *Villacres* opinion to the facts of this case, we are bound by the Supreme Court's contrary holding in *Arias*. (See *Arias*, *supra*, 46 Cal.4th at p. 985 ["the judgment in [a PAGA action] is binding not only on the named employee plaintiff but also on government agencies and any aggrieved employee not a party to the proceeding"].) Because under the Supreme Court's decision in *Arias* the settlement of the PAGA claims in this action will bar the PAGA claims in Clarke's action, Clarke has standing to appeal from the judgment.

     C. *The Judgment Must be Reversed to Allow the Trial Court to Comply with Section 2699*

Clarke argues that the trial court erred in approving the provision of the settlement agreement resolving the PAGA claims because (1) the settlement agreement does not allocate 25 percent of the civil penalties to the aggrieved employees, as required by section 2699, subdivision (i); (2) there is no evidence in the record that the court specifically reviewed and approved the civil penalties allocated to the PAGA claims, as required by section 2699, subdivision (l); (3) plaintiffs and First Transit colluded in

11

settling the PAGA claims; and (4) the settlement agreement contravenes PAGA's purpose of deterring employers from committing Labor Code violations because it significantly undervalues the PAGA claims. (See *Montano v. Wet Seal Retail, Inc*. (2015) 232 Cal.App.4th 1214, 1223 ["PAGA was clearly established . . . to deter [Labor Code] violations"].) We agree with Clarke's first two arguments (and do not reach the second two).

Section 2699, subdivision (i), provides that civil penalties recovered under PAGA "shall be distributed" 75 percent to the Labor and Workforce Development Agency and 25 percent to the aggrieved employees, which includes "all employees affected by the Labor Code violation[s]." (*Iskanian*, *supra*, 59 Cal.4th at p. 382.) The settlement agreement, however, allocates 100 percent of the $10,000 in PAGA civil penalties to the Labor Workforce Development Agency. Plaintiffs and First Transit do not address this misallocation of the PAGA penalties in their briefs, although at oral argument counsel for plaintiffs admitted that the agreement's failure to distribute 25 percent of the civil penalties to the employees aggrieved by the Labor Code violations was an "oversight." Thus, there is no dispute the agreement fails to comply with PAGA's distribution requirements.

In addition, under section 2699, subdivision (l), the trial court must "review and approve any penalties sought as part of a proposed settlement agreement pursuant to [PAGA]." In its order approving the settlement agreement, the court summarized the material terms of the agreement, and noted that the agreement included a provision settling the PAGA claims. The court's analysis of the settlement terms and description of the settlement process, however, do not address the sufficiency of the $10,000 allocated to the PAGA claims. Rather, the court's analysis and comments at the final approval hearing are devoted entirely to whether the gross amount of the settlement is fair under the standards governing class action settlements, and whether the class members received proper notice of the settlement. PAGA claims, however, are not subject to or governed by class action rules and requirements. (See *Arias*, *supra*, 46 Cal.4th at pp. 980-987.) Therefore, we cannot infer, as plaintiffs ask us to infer , that the court's analysis of the

12

gross amount of the settlement under class action standards necessarily indicates that the court separately reviewed and approved the settlement of the PAGA claims. (See *Baumann v. Chase Inv. Servs. Corp.*, *supra*, 747 F.3d at. p. 1124 [class actions and PAGA claims "are more dissimilar than alike" because a "PAGA action is at heart a civil enforcement action filed on behalf of and for the benefit of the state, not a claim for class relief"].) Indeed, the fact that the court overlooked the agreement's failure to allocate 25 percent of the PAGA penalties to the aggrieved employees, as required by section 2699, subdivision (i), strongly suggests that the court did not separately review and approve the PAGA portion of the agreement. We therefore remand the matter and direct the court to review the agreement's provision settling the PAGA claims and ensure that any approved settlement of the PAGA claims complies with section 2699, subdivision (i).

## DISPOSITION

The order denying Clarke's ex parte application for leave to intervene is affirmed. The judgment is reversed and the matter remanded to the trial court to conduct a new hearing for final approval of the settlement agreement in compliance with the requirements of section 2699, subdivisions (i) and (l). The trial court is directed to allow Clarke to participate in the final approval hearing for the purpose of contesting the settlement of the PAGA claims. Each party is to bear its costs on appeal.

SEGAL, J.

We concur:

ZELON, Acting P. J.

STROBEL, J.[*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13