Filed 9/16/24  Navigators Real Estate v. Chao CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| NAVIGATORS REAL ESTATE, INC. et al., | B332359 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. Nos. 23AHCV00045, 23AHCV00201) |
| v. | |
| JACK W. CHAO, | |
| Defendant and Appellant. | |

APPEALS from orders of the Superior Court of Los Angeles County, Margaret L. Oldendorf, Judge.  Affirmed.

Jack Wei Chao, in pro. per., for Defendant and Appellant.

Law Office of Charles Pok and Associates, Charles Pok; Mascheroni Law and Laura E. Mascheroni for Plaintiffs and Respondents.

Defendant and appellant Jack W. Chao, a real estate attorney, appeals from trial court orders denying his special motions to strike pursuant to California's anti-SLAPP statute (Code Civ. Proc., § 425.16).[1] Chao moved to strike causes of action asserted against him in two complaints, one filed by Navigators Real Estate, Inc., which does business as Pinnacle Real Estate Group (Pinnacle), and a second filed by Jing Shao, a real estate buyer. We affirm the trial court orders.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 6, 2022, Jing Shao and Liping Huang entered into a real estate purchase agreement whereby Shao agreed to purchase Huang's real property in Monrovia, California. The parties agreed to close escrow by December 26. On December 6, Huang also signed a contract with Pinnacle in which she agreed to pay Pinnacle a commission on the sale of her property. Despite these agreements, and acting at least in part on Chao's advice, Huang refused to complete the sale and did not pay the commission.

On January 6, 2023, Pinnacle filed a complaint against Chao, Huang, and Lina Ta, Huang's son's girlfriend or fiancée. The complaint alleged a claim for breach of contract against Huang and a claim for intentional inference with contractual relations against Chao and Ta.

The complaint alleged that Chao is a real estate broker who, acting in concert with Ta, "persuaded Defendant Liping Huang not to close the escrow as required by the [real estate

---

[1] All subsequent undesignated statutory references are to the Code of Civil Procedure.

2

purchase agreement] and not to pay the service fee as required per the [commission agreement] to Plaintiff." According to the complaint, Chao and Ta persuaded Huang "to cancel this valid [real estate purchase agreement] so that Jack Wei Chao can become Defendant Liping Huang's real estate broker and sell the property for Defendant Liping Huang and pocket the commission and Lina Ta can control the proceeds of the sale of The Property in conjunction with Defendant Jack Wei Chao." Pinnacle also alleged that Chao was aware of the "valid contract" between Pinnacle and Huang, his "conduct prevented" Huang from "performing" her two contracts, and Chao knew his conduct would cause Huang to refuse to perform her obligations under the contracts.

On January 27, 2023, Shao also filed a complaint against Chao, Huang, and Ta. Shao asserted an intentional inference with contractual relations claim against Chao and Ta. Shao alleged that Chao and Ta "persuaded" Huang not to close escrow and to cancel the real estate purchase agreement. Shao further asserted that Chao and Ta persuaded Huang to withhold Shao's money in escrow. Like Pinnacle, Shao alleged Chao had done so to become Huang's real estate broker and to sell the property himself. Shao asserted Chao was aware of the valid real estate purchase agreement and his conduct prevented Huang from closing escrow and performing her contractual obligations.

On June 12, 2023, the trial court issued an order finding the Pinnacle and Shao cases related.

### Chao's Special Motions to Strike

On June 14, 2023, Chao filed a special motion to strike Shao's intentional interference with contractual relations cause of action, pursuant to section 425.16. On June 26, Chao filed a

3

special motion to strike the same cause of action in Pinnacle's complaint. Chao made the same arguments in both motions.

Chao argued the anti-SLAPP statute applies to lawyers engaged in litigation activity. He asserted he had an attorney-client relationship with Huang when he persuaded her not to complete the real estate transaction. He also argued that his communications with individuals at Pinnacle were protected "settlement negotiations." Chao further contended the litigation privilege in Civil Code section 47, subdivision (b) barred the plaintiffs' claims.

In support of both special motions to strike, Chao submitted a declaration stating that on December 16, 2022, Huang retained Chao as an attorney to represent her in the real estate transaction. Lina Ta, who had power of attorney for Huang because Huang lived in China and had "mental issues," had contacted Chao. Chao declared that he performed a legal analysis and concluded Huang did not understand the terms of the commission and real estate purchase agreements, did not approve of the amount of the commission, and did not consent to some of the real estate purchase agreement terms. Chao also declared that he discovered a "$1.027 [million] note secured by the property which benefits the Buyer Jing Shao." The note was not documented in either contract and, in Chao's opinion, presented a "huge risk" to Huang. Chao therefore "suggested Liping H[u]ang not complete the transaction."

Chao described three subsequent communications with Pinnacle. On December 21, 2022, Chao called real estate broker Brian H. Chen, Huang's broker at Pinnacle who represented her

4

in the sale, to "dispute" the agreements.[2] Two days later, Chao called Charles Pok, a real estate attorney representing Pinnacle and buyer Shao. Chao accused Pinnacle of acting as a "dual agent" because Pinnacle represented both the buyer and seller in the transaction. Pok disagreed and "indicated a possible lawsuit." Chao told Pok he would represent Huang and Ta "in the upcoming legal proceedings."

According to Chao, on January 2, 2023, he e-mailed Pok. Chao declared that this e-mail was a "settlement offer." The e-mail stated, "After my extensive effort on the Seller's son, who is the decision maker in this case, I'm presenting the following terms to resolve the purchase agreement dispute . . . ." The e-mail proposed: the "purchase price to be paid in full in [U.S.] dollars through escrow," a total 4 percent commission for the sales and listing agents, and furniture would not be included in the sale.

Chao also supported the special motions to strike with a declaration from Chen, which Pinnacle had previously filed in support of a motion for default judgment. Chen declared that sometime around the scheduled close of escrow on December 26, 2022, Huang told Chen that Chao and Ta advised her to pressure Shao to pay more by "lock[ing]" Shao's money in escrow. When Chen refused to assist Huang, she told him she would not close escrow or pay the commission.

On July 14, 2023, Pinnacle filed an opposition arguing that Chao's special motion to strike was untimely and also that he failed to show his conduct was protected by the anti-SLAPP

---

[2] According to Ta's declaration in support of Chao's motions to strike, Chao advised Huang to stop the sale before he called Chen on December 21.

5

statute or the litigation privilege. Pinnacle did not submit any evidence with the opposition, but referred to evidence Chao had previously submitted in support of the special motion to strike.

On July 26, 2023, the trial court ruled on the anti-SLAPP motion to strike as to Pinnacle's complaint. Although the court concluded the motion was untimely, it nonetheless exercised its discretion to consider the merits. The court found Chao had not met his burden of establishing that Pinnacle's claim against him arose from protected activity under the anti-SLAPP statute.

On August 2, 2023, Shao filed a two-page opposition to Chao's special motion to strike in the Shao action. Shao argued Chao's motion was identical to the motion he filed in Pinnacle's action, and therefore failed for the same reasons the trial court gave in denying the first motion.

On August 16, 2023, the trial court denied Chao's anti-SLAPP motion to strike Shao's cause of action against him. The court again found that Chao had not met his burden of establishing the claims asserted against him arose from protected activity. The court explained that Chao allegedly persuaded Huang not to complete her contractual obligations and then attempted to negotiate new terms by sending the e-mail to Pok. There was no evidence this or any other negotiations were in anticipation of litigation.

On August 21, Chao filed a notice of appeal of the trial court's July 26 order. On August 23, he filed a notice of appeal of the trial court's August 16 order. We granted the parties' joint motion to consolidate the two appeals.

6

## DISCUSSION

## I. The Trial Court Did Not Err in Denying Chao's Special Motions to Strike

Chao challenges the trial court orders denying his special motions to strike. He asserts the trial court erred in finding his special motion to strike Pinnacle's complaint was untimely.[3] He also contends the trial court erred in concluding the plaintiffs' allegations against him did not arise from protected "prelitigation" activity under section 425.16, subdivision (e).[4]

### A. Anti-SLAPP law and standard of review

"To combat lawsuits designed to chill the exercise of free speech and petition rights (typically known as strategic lawsuits against public participation, or SLAPPs), the Legislature has

---

[3]     We decline Chao's request that we disregard the respondents' joint brief on appeal because it was untimely. Although the Respondents' brief was filed late, this court exercised its discretion to accept the brief and Chao does not assert he suffered any prejudice from the late filing.

We also do not consider Chao's argument that the trial court erred in finding the special motion to strike Pinnacle's complaint was untimely. Despite the finding of untimeliness, the trial court exercised its discretion to consider the special motion to strike on its merits. We may affirm the trial court's order if it is correct on any theory and we therefore need not consider Chao's alternative argument. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [decision will be affirmed on appeal if correct on any theory].)

[4]     At oral argument, Chao raised an additional argument based on a theory of anticipatory repudiation of the contracts. We do not consider arguments raised for the first time at oral argument. (*Dameron Hospital Assn. v. AAA Northern California, Nevada & Utah Ins. Exchange* (2022) 77 Cal.App.5th 971, 997.)

authorized a special motion to strike claims that are based on a defendant's engagement in such protected activity.  (See Code Civ. Proc., § 425.16, subd. (a).)"  (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060 (*Park*).)

The resolution of a special motion to strike under section 425.16 involves two steps.  "Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged.  [Citations.]"  (*Park*, *supra*, 2 Cal.5th at p. 1061.)  A claim arises from protected activity "when that activity underlies or forms the basis for the claim."  (*Id.* at p. 1062.)  If the defendant carries its burden to demonstrate the plaintiff's claims arise from protected activity, the plaintiff must then demonstrate the claims have minimal merit.  (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884.)

Our review of whether the trial court properly denied the anti-SLAPP motion on the merits is de novo.  (*Park*, *supra*, 2 Cal.5th at p. 1067.)  "We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity."  (*Ibid.*)  We consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).)

### B.     Chao has not established that plaintiffs' allegations arise from protected activity

The first question in the anti-SLAPP analysis is whether the plaintiffs' claims or allegations arise from protected activity. A cause of action arises from protected activity under the anti-SLAPP statute only "when that activity underlies or forms the basis for the claim."  (*Park*, *supra*, 2 Cal.5th at p. 1062.)  To

8

determine this, we " 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.] The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009.)

Section 425.16, subdivision (e), describes four categories of conduct protected by the anti-SLAPP statute. (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 620.) Chao appears to assert that two of those categories apply here: section 425.16, subdivision (e)(1), "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law," and subdivision (e)(2), "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body . . . ." He argues that his act of advising Huang not to complete the real estate transaction "necessarily relates to [the] prelitigation privilege."

"Although the [anti-SLAPP] statute refers to ongoing proceedings," many courts have held that prelitigation communications may qualify for section 425.16 protection, so long as they concern the subject of the dispute and are made in anticipation of litigation contemplated in good faith and under serious consideration. (*Medallion Film LLC v. Loeb & Loeb LLP* (2024) 100 Cal.App.5th 1272, 1284 (*Medallion Film*) [collecting cases]; *People ex rel. Fire Ins. Exchange v. Anapol* (2012) 211 Cal.App.4th 809, 824 (*Anapol*).) Similarly, " '[n]umerous cases have held that the SLAPP statute protects lawyers sued for litigation-related speech and activity. [Citations.] Put otherwise,

9

legal advice and settlement made in connection with litigation are within section 425.16, and may protect defendant attorneys from suits brought by third parties on any legal theory or cause of action "arising from" those protected activities.' [Citation.]" (*Clarity Co. Consulting, LLC v. Gabriel* (2022) 77 Cal.App.5th 454, 464 (*Clarity*).)

Pinnacle's and Shao's complaints each assert a single cause of action against Chao: intentional interference with contractual relations. "To prevail on a cause of action for intentional interference with contractual relations, a plaintiff must plead and prove (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." (*Reeves v. Hanlon* (2004) 33 Cal.4th 1140, 1148.)

Both complaints identify similar activity that they allege constitutes Chao's intentional inference with the parties' contractual relationship. Pinnacle's complaint alleges Chao persuaded Huang not to close escrow and not to pay the commission fee, and that Huang breached the contracts based on Chao's "persuasion." Shao's complaint similarly alleges Chao persuaded Huang not to close escrow and to withhold Shao's money in the escrow account.

This alleged conduct is neither litigation-related protected activity, nor speech or activity made in anticipation of litigation. Both complaints limit the allegations against Chao to his act of persuading Huang not to complete the real estate transaction. The evidence Chao submitted in support of the special motion to strike indicates there was no litigation pending or anticipated at

10

that time. Chao had merely reviewed the relevant contracts and advised Huang she should not go through with the sale. At that point, there was not yet a claim to be litigated or settled. There is no indication that when Chao persuaded Huang not to carry out her contractual obligations, there was litigation contemplated in "good faith and under serious consideration . . . ." (*Anapol*, *supra*, 211 Cal.App.4th at p. 824.) Chao did not indicate in his declaration that his advice to Huang was in anticipation of litigation or related to litigation. A defendant arguing challenged conduct was protected prelitigation activity must "show litigation [was] more than theoretical . . . ." (*People ex rel. Allstate Ins. Co. v. Rubin* (2021) 66 Cal.App.5th 493, 500 (*Rubin*).)

Chao asserts that his investigation, negotiation efforts, and settlement offer were prelitigation activities that related to the eventual litigation of the parties' dispute, and are therefore protected. Yet, the plaintiffs' complaints do not mention Chao's subsequent negotiations or communications with Pinnacle's counsel. The claims are not based on Chao's conduct after he persuaded Huang not to complete the sale. "[W]here a plaintiff's claim attacks only the defendant's decision to undertake a particular act,"—here, Chao's decision and act of convincing Huang not to carry out her contractual obligations—"and if that decision is not itself protected activity, that claim falls outside the ambit of the anti-SLAPP statute." (*Mission Beverage Co. v. Pabst Brewing Co., LLC* (2017) 15 Cal.App.5th 686, 701 (*Mission Beverage*).)

Chao argues that his advice to Huang that she not complete the sale "necessarily relates" to his subsequent acts of disputing, negotiating, and making a "settlement" offer to Pok, which he asserts were protected prelitigation activities. Chao

11

points to his December 23, 2022 call to Pok, when Pok mentioned a possible lawsuit, and to Chao's January 2, 2023 e-mail to Pok, which he characterizes as a "settlement offer." However, "the mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the anti-SLAPP statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) Chao advised Huang not to complete her contractual obligations before his December 21, 2022 call to Chen. The complaints' claims against Chao arise from his alleged persuasion of Huang, not Chao's subsequent conduct.

Further, in Chao's first call to Chen, neither party mentioned litigation. And, according to Chao's declaration, when Chao called Pok two days later, Pok—not Chao—raised the possibility of litigation first. "While eventual litigation was a remote possibility from the mere fact that [Chao's calls] alerted [Chen and Pok] that [Chao] wanted something from [Pinnacle], a remote possibility is not enough to demonstrate a communication is actually connected to litigation and is therefore protected." (*Medallion Film*, *supra*, 100 Cal.App.5th at p. 1287.) Thus, "[w]hen conduct ' "will lead to litigation only if negotiations fail or contractual commitments are not honored, future litigation is merely theoretical rather than anticipated and the conduct is therefore not protected prelitigation activity." ' [Citation.]" (*Ibid*.) Even though Pok mentioned litigation, the " 'possibility of litigation in the event of nonperformance is not enough to conclude' " that Chao's actions were " 'made in anticipation of litigation contemplated in good faith and under serious consideration.' [Citation.]" (*Rubin*, *supra*, 66 Cal.App.5th at p. 500.)

*Clarity*, *supra*, 77 Cal.App.5th 454, is illustrative.  In *Clarity*, the parties entered into a contract in which Clarity Co. Consulting, LLC (Clarity) agreed to provide services to another company, ONclick Healthcare, Inc. (ONclick).  (*Id*. at pp. 458–459.)  ONclick failed to pay for the services.  Clarity sued ONclick and its general counsel for breach of contract.  The complaint asserted intentional misrepresentation and concealment claims based on allegations that the company and general counsel had misrepresented and suppressed evidence of the company's weak financial condition.  (*Id*. at pp. 459–460.)

The general counsel filed an anti-SLAPP motion to strike Clarity's claims against him.  He asserted he was not involved in negotiations of the relevant contract and that he was only part of negotiations relating to an unrelated employment contract with a Clarity employee.  The general counsel alleged that after negotiations regarding the employment contract broke down, Clarity threatened to sue and demanded immediate payment under the terms of the services contract.  The parties engaged in settlement negotiations, which failed.  The general counsel contended that his contract and settlement-related negotiations were thus protected conduct.  (*Clarity*, *supra*, 77 Cal.App.5th at pp. 460–461.)

The *Clarity* court rejected the general counsel's argument that the claims against him arose from protected activity.  (*Clarity*, *supra*, 77 Cal.App.5th at p. 463.)  The court reasoned, "Appellant's misrepresentations and acts of concealment were not made in contemplation or anticipation of future litigation.  When they were made, there was no claim or dispute to be litigated or settled.  [¶] Appellant's litigation-related activity did not commence until the employment contract negotiations 'broke

13

down' and ONclick refused respondent's request that it immediately pay respondent's invoices. As appellant stated in his points and authorities filed in the trial court, 'The parties then engaged in settlement negotiations' that 'failed.' " (*Id*. at p. 464.) The court reviewed the allegations in the complaint and concluded the allegations arose solely from the defendants' failure to pay and misrepresentation and concealment of ability to pay, not the subsequent negotiations or settlement discussions. (*Id*. at pp. 464–465.)

Chao argues that *Clarity* is distinguishable because the plaintiffs' intentional inference with contractual relations claims here are "directly related" to Chao's settlement discussions with plaintiffs and his belief that the underlying agreements were induced by fraud. He further asserts that in *Clarity*, the Court of Appeal denied the anti-SLAPP motion because the causes of action for intentional misrepresentation and concealment had "nothing to do with settlement discussions." (*Clarity*, *supra*, 77 Cal.App.5th at p. 463.) We disagree. The contractual interference claims plaintiffs have alleged do not arise from the settlement discussions between Chao and the plaintiffs. Instead, they are based on Chao's act of persuading Huang to abandon the contracts. That act was not made in contemplation or anticipation of future litigation. As in *Clarity*, Chao's subsequent communications with Chen communicating this decision, and with Pok attempting to renegotiate the contracts' terms, do not transform his alleged acts of interference into protected prelitigation conduct. (*Mission Beverage*, *supra*, 15 Cal.App.5th at p. 701 [defendant's decision to terminate a contractual agreement was not protected activity; a subsequent

14

communication of that decision did not convert the contract-related decision into protected speech].)

Moreover, as was apparent in *Clarity*, that the defendant is a lawyer does not render all of the defendant's acts protected activity. "Not all attorney conduct in connection with litigation, or in the course of representing clients, is protected by section 425.16." (*California Back Specialists Medical Group v. Rand* (2008) 160 Cal.App.4th 1032, 1037 [rejecting assertion of protected litigation activity under anti-SLAPP statute where the appellant attorney argued his conduct concerning liens was protected activity because he disbursed the funds as an attorney and was representing his clients in the underlying actions].) Chao was required to establish that plaintiffs' allegations against him challenged conduct made in genuine contemplation of litigation. He failed to meet that burden. (*Medallion Film*, *supra*, 100 Cal.App.5th at pp. 1287–1288 [lawyer's alleged misrepresentations in letter regarding the parties' dispute were not protected activity because they were not in good faith and serious contemplation of litigation; lawyer's acts aiding client's alleged fraud preceding the letter had no connection to protected activity].)

Chao's reliance on *Optional Capital, Inc. v. Akin Gump Strauss, Hauer, & Feld, LLP* (2017) 18 Cal.App.5th 95, is misplaced. In *Optional Capital*, the court explained that the conduct which formed the basis of the claims against the lawyer defendants arose directly from ongoing litigation in which the defendants were representing a client involved in the dispute. The claims at issue challenged one law firm's work in negotiating a settlement of a state court action, and another firm's alleged failure to disclose that settlement to a federal district court. The

plaintiff relied on counsel's in-court statements as evidence of the alleged wrongful acts. (*Id*. at p. 114.) The Court of Appeal observed that " 'conduct is not automatically protected merely because it is related to pending litigation; the conduct must arise from the litigation.' [Citation.]" (*Ibid*.) It therefore determined that the conduct was protected not simply because it involved an attorney-client relationship, as Chao argues here, but because the alleged conduct arose from the litigation. (*Ibid*.) Here, in contrast, the allegations concerning Chao's interference with the parties' contracts did not arise from any pending litigation.

Chao has not carried his burden of establishing that the plaintiffs' claims against him arise from protected activity under section 425.16, subdivision (e). (*Park*, *supra*, 2 Cal.5th at p. 1073.) Accordingly, we need not reach the second step of the special motion to strike inquiry. We therefore do not consider Chao's argument that plaintiffs cannot show a probability of prevailing because his conduct was protected by the litigation privilege. We also do not consider the arguments Chao makes in his reply brief that the underlying contracts were induced by fraud and were not enforceable, or that he is likely to prevail on the merits. We reject Chao's argument that the trial court erred in denying his anti-SLAPP motions based solely on the allegations in the complaints. As explained above, the first step of the anti-SLAPP analysis required *Chao* to demonstrate that the allegations he was moving to strike arose from protected activity under section 425.16. It is of no consequence that, in opposition to the special motion to strike, plaintiffs relied on Chao's evidence and did not provide independent evidentiary support for the allegations in the complaint.

16

## II. Chao Lacks Standing to Raise an Issue Affecting Only Huang

On August 21, 2023, Chao filed a notice of appeal to challenge the trial court order denying his special motion to strike Pinnacle's complaint.  On August 22, 2023, the trial court sustained Pinnacle's demurrer to Huang's cross-complaint.  Chao argues that order must be vacated because his act of filing a notice of appeal effected an automatic stay.[5]

Chao has no standing to raise issues that affect only a non-party to the appeal.  Huang is not a party to this appeal.  Chao is not aggrieved by an order sustaining a demurrer to *Huang's* cross-complaint.  (*Estate of Kempton* (2023) 91 Cal.App.5th 189, 202 (*Kempton*).)  Standing is a jurisdictional requirement and we therefore do not consider Chao's contention.  (*Conservatorship of Gregory D.* (2013) 214 Cal.App.4th 62, 67.)

## III. Chao Fails to Establish Reversible Error Based on Judicial Bias

Under the heading "The Trial Court Ruled in Pinnacle's Favor Without Evidentiary Support Casting Doubt on Impartiality," Chao appears to argue that the trial court has demonstrated a lack of impartiality by: incorrectly overruling his demurrer to Pinnacle's complaint; denying his motion for sanctions against Pinnacle without considering relevant evidence; speaking with one of plaintiffs' attorneys alone;

---

[5] We note that while an appeal from the denial of an anti-SLAPP motion automatically stays further trial court proceedings on the merits, this is true only with respect to causes of action affected by the motion. (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 195, fn. 8.)  Chao's special motion to strike did not challenge any cause of action asserted against Huang.

suggesting arbitration; indicating it "respectively [*sic*] disagree[d]" with Shao's counsel's argument; denying the motions to strike; and granting Pinnacle's demurrer to Huang's cross-complaint.

These arguments lack merit. Chao has provided a laundry list of complaints about the trial court's substantive rulings without any legal analysis or cogent argument. This is insufficient to present a cognizable issue for appellate review. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609 (*Jameson*); *Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 497–498.) To the extent that Chao seeks to challenge non-appealable orders, orders that are not the subject of his notices of appeal, or orders for which he is not the aggrieved party, we lack jurisdiction to consider his claims. (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696; *Kempton*, *supra*, 91 Cal.App.5th at p. 202; *Faunce v. Cate* (2013) 222 Cal.App.4th 166, 170.) Further, Chao has failed to provide an adequate record for us to review any claims of judicial misconduct based on the trial court's statements in open court, as he did not include a reporter's transcript or other substitute in the record on appeal. (*Jameson*, at pp. 608–609; *In re Marriage of Obrecht* (2016) 245 Cal.App.4th 1, 8–9.) Chao's unsupported representations about what the trial court said are insufficient.

Finally, that the trial court ruled against Chao, even if those rulings were erroneous, does not establish judicial bias or lack of impartiality. (*People v. Farley* (2009) 46 Cal.4th 1053, 1110.) Chao has not demonstrated any judicial bias or misconduct that would mandate reversal.

## DISPOSITION

The trial court orders denying Chao's special motions to strike are affirmed.  Respondents to recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

EGERTON, J.